961 So.2d 1228 (2007)
J. Robert WOOLEY, Commissioner of Insurance for the State of Louisiana in his Capacity as Liquidator of Amcare Health Plans of Louisiana, Inc.
v.
Thomas S. LUCKSINGER, Michael D. Nadler, Stephen J. Nazarenus, Scott Westbrook, Michael K. Jhin, William F. Galtney, John P. Mudd, Executive Risk Indemnity, Inc., Executive Risk Management Associates, Executive Risk Specialty Insurance Company, Executive Liability Under Writers Greenwich Insurance Company, Amcareco, and Amcare Management Inc.
J. Robert Wooley, Commissioner of Insurance for the State of Louisiana, in his Capacity as Liquidator for Amcare Health Plans of Louisiana, Inc.
v.
Foundation Health Corporation, Foundation Health Systems, Inc., and Health Net, Inc.
J. Robert Wooley, Commissioner of Insurance for the State of Louisiana, as Liquidator for Amcare Health Plans of Louisiana, Inc., in Receivership
v.
Pricewaterhousecoopers, LLP.
Nos. 2006 CA 1167, 2006 CA 1168, 2006 CA 1169.
Court of Appeal of Louisiana, First Circuit.
May 4, 2007.
*1230 Edward J. Walters, Jr., Joseph E. Cullens, Jr., Baton Rouge, Counsel for Plaintiff  Appellee J. Robert Wooley, Commissioner of Insurance.
Guy M. Hohmann, Austin, TX, Counsel for Plaintiff  Appellee J. Robert Wooley, Commissioner of Insurance.
David M. Latham, Keary L. Everitt, New Orleans, Counsel for Third Party Defendant  Appellee Louisiana Department of Insurance.
Leon Gary, James C. Percy, Brandon K. Black, David M. Kerth, Baton Rouge, Counsel for Defendant  Appellant Health Net, Inc.
Robert B. Bieck, Jr., Sarah B. Belter, New Orleans, Counsel for Defendant  Appellant Health Net, Inc.
Before: CIACCIO, LANIER and CLAIBORNE, JJ.[1]
LANIER, J.
Defendant, Health Net, Inc. (Health Net), seeks appellate review of a judgment sustaining a peremptory exception raising the objection of no cause of action to its third party demand against the Louisiana Department of Insurance (DOI) and dismissing the third party demand with prejudice. For the following reasons, we affirm the judgment dismissing the third party demand and that portion of the judgment that dismissed the detrimental reliance cause of action with prejudice. The portion of the judgment pertaining to the third party demand for the governmental tort cause of action is amended to provide that the dismissal is without prejudice and it is ordered that the allegations contained therein are retained and considered as an affirmative defense.

PROCEDURAL FACTS
These three consolidated actions were filed by J. Robert Wooley, Commissioner of Insurance for the State of Louisiana (Commissioner) in his capacity as liquidator of AmCare Health Plans of Louisiana, Inc. (AmCare-LA). These actions as finally amended alleged corporate mismanagement and accounting negligence and sought the enforcement of contractual guarantees and damages for contract fraud and tort gross negligence. Health Net owned AmCare-LA, AmCare Health Plans of Texas, Inc. (AmCare-TX), and AmCare Health Plans of Oklahoma, Inc. (AmCare-OK).[2] Health Net was joined as one of many defendants. The Texas and Oklahoma insurance regulators in their capacities as receivers for AmCare-TX and AmCare-OK intervened in these actions.
Health Net answered the various petitions and filed cross claims, third party demands and reconventional demands. In particular, Health Net filed a third party demand against the State of Louisiana, by and through DOI. Health Net asserted that DOI "negligently enforced and/or negligently failed to enforce applicable laws and regulations," that because of this "the AmCare HMOs were made more deeply insolvent than they might have been had they been placed in receivership [sooner], thereby resulting in greater losses to the policyholders, creditors, shareholders (like Health Net) and the general public" and prayed for indemnity, contribution, *1231 governmental tort damages and damages for detrimental reliance.
DOI responded by filing a peremptory exception raising the objection of no cause of action to each of these claims.
At the beginning of the trial of the exception, counsel for DOI stated the following:
With respect to the claims of contribution and indemnity in Health Net's opposition memorandum we received last week, Health Net states they do not oppose the exceptions of no cause of action on the grounds of contribution and indemnity. With that in mind, we would respectfully ask that a judgment be issued granting department of insurance's exception of no cause of action on the grounds of contribution and indemnity.
There was no objection by Health Net and the trial court responded, "So ordered."[3]
The hearing then proceeded with oral argument on the causes of action for negligence and detrimental reliance. After the matter was submitted, the trial court, for oral reasons assigned, sustained the exception. In its written judgment, the trial court dismissed all of Health Net's third party demand against DOI with prejudice.
These appeals followed.

THE OBJECTION OF NO CAUSE OF ACTION[4]
The objection of no cause of action is raised by the peremptory exception. La. C.C.P. art. 927 A(4). An exception is a means of defense to an action, other than a denial or avoidance of the demand, used by a defendant to retard, dismiss or defeat the demand. La. C.C.P. art. 921. In particular, the function of the peremptory exception is to have the plaintiff's action declared legally nonexistent or barred by effect of law. La. C.C.P. art. 923. A civil action is a written demand filed in a court of competent jurisdiction that seeks the enforcement of a legal right (cause of action). La. C.C.P. art. 421. A civil action must state a cause of action or it will be dismissed. La. C.C.P. art. 934. A cause of action arises to permit a civil action when there has been a failure to perform an obligation and the obligation can be enforced by judicial relief. La. C.C.P. art. 423. Performance of an obligation may consist of giving, doing, or not doing something. La. C.C. art. 1756. Thus, to state a cause of action in the initial pleading in a civil action, the obligee (plaintiff) must allege facts that, if proven, would show (1) the obligation involved; (2) the breach of the obligation; and (3) judicial relief can be granted.[5] Finally, a cause of action "has been defined as `an act by defendant which gives a plaintiff a right to invoke judicial interference on his behalf and as `the operative facts which give rise to the *1232 plaintiff's right to judicially assert the action against the defendant."' (Footnotes omitted.) F. Maraist & H. Lemmon, 1 La. Civ. Law Treatise, Civil Procedure, § 6.7(2), pp. 126-27 (1999) and the cases cited therein.
No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action. La. C.C.P. art. 931. For purposes of the objection, all facts pleaded are accepted as true. Davis v. Town of St. Gabriel, XXXX-XXXX, p. 10 (La.App. 1 Cir. 2/15/02), 809 So.2d 537, 543, writs denied, XXXX-XXXX, XXXX-XXXX (La.10/14/02), 827 So.2d 420. If the law does not grant the remedy sought under the facts alleged, the objection should be sustained. Badeaux v. Southwest Computers Bureau, Inc., XXXX-XXXX, XXXX-XXXX, p. 7 (La.3/17/06), 929 So.2d 1211, 1217; Industrial Companies, Inc. v. Durbin, XXXX-XXXX, pp. 6-7 (La.1/28/03), 837 So.2d 1207, 1213.
Louisiana Code of Civil Procedure article 934 provides as follows:
When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed.
In Alexander and Alexander, Inc. v. State, through the Div. of Admin., 486 So.2d 95, 100 (La.1986), appears the following:
Under the provisions of La.Code of Civ. Proc. art. 934, it is mandatory that the trial judge permit an amendment to the petition when the grounds of the objection pleaded by the exception are of such a nature [as] might be removed by amendment.

As a general rule, the first `shall' in La.Code of Civ.Proc. art. 934 requires that the adverse party be given an opportunity to amend where there is a conceivable possibility that a cause of action may be stated. However, the right to amend is not so absolute as to permit the same when such amendment would constitute a vain and useless act.
The judgment maintaining the exception of no cause of action in this case contains no order granting plaintiffs leave to amend their petition. We are of the opinion that, given the opportunity to amend, there is a possibility that plaintiff may be able to state a cause of action against defendants, and that the trial judge should have allowed such amendment. We will remand with the instructions that an order issue permitting plaintiffs to amend their petition, if they can, to state a cause of action, within a delay deemed reasonable by the trial court. [Citations omitted and emphasis added.]

THE FACTS ALLEGED IN THE PETITION
The following are the pertinent allegations of fact in Health Net's restated answer and third party demand.[6]

ELEVENTH AFFIRMATIVE DEFENSE
Health Net affirmatively pleads that it is entitled to setoff any recovery or *1233 award made against it in these proceedings to recover or apportion damages arising from the acts or omissions of Plaintiffs and/or other parties that caused in whole or in part the insolvency of Plaintiffs.
* * *
TWENTY-FIRST AFFIRMATIVE DEFENSE
Recovery, if any, by Plaintiffs should be barred or reduced by the proportionate fault of (1) Plaintiffs, (2) other defendants and/or (3) third parties to the extent said parties caused or contributed to the alleged acts, events, incidents or happenings, and the alleged injuries or damages.
TWENTY-SECOND AFFIRMATIVE DEFENSE
Health Net was entitled to and did justifiably rely on material information provided to it by Plaintiffs and/or others, including without limitation, the States of Louisiana, Texas and Oklahoma, the D & O Defendants,[7] and the AmCare HMOs.
* * *
THIRTY-NINTH AFFIRMATIVE DEFENSE
Health Net further avers that, to the extent that the alleged insolvency of any of the HMOs was "deepened" by the continued operation of such HMOs, then any such resulting damage was caused by the fault of the regulatory entity in the state in which such HMO operated and Health Net is not responsible for the fault of such regulatory entity in failing to properly perform its regulatory function.
* * *
172.
Upon information and belief, prior to filing financial statements with the Louisiana Department of Insurance in 2000, AmCareCo, Lucksinger, Nadler and Nazarenus[8] had knowledge of facts indicating that no reasonable basis existed for a representation that AmCare-LA was solvent, yet financial statements were filed with the Louisiana Department of Insurance falsely stating that AmCare-LA was solvent.
173.
Upon information and belief, Luck-singer, Nadler and Nazarenus made representations in the 2000 financial statements without a reasonable basis to believe that the statements were true or accurate, and with the intent that the statements be relied upon by the Louisiana Department of Insurance.
174.
Upon information and belief, the Louisiana Department of Insurance had constructive knowledge of the falsity of these statements in the 2000 Statutory Annual Statement, and still continued to allow AmCare-LA to continue operating as an HMO in the state of Louisiana.

*1234 175.
Upon information and belief, AmCare-LA, AmCareCo, and the shareholders of AmCareCo suffered losses that they would not have suffered as a result of the actions of AmCareCo, Lucksinger, Nadler, Nazarenus and the Louisiana Department of Insurance.
* * *
193.
THIRD PARTY CLAIM
Now assuming the position of third party plaintiff, Health Net joins as a defendant and asserts third party claims as follows:
194.
Named third party defendant herein is State of Louisiana, by and through the Louisiana Department of Insurance.
195.
Health Net hereby incorporates by reference all of the allegations set forth in this Amended Answer, Reconventional Demand, Cross Claim and Third Party Demand. This third party claim is asserted in the alternative in the event that Health Net is found liable for damages to the Plaintiffs and the third party defendant is also found at fault.
196.
At paragraphs 39, 47, 71, 34, 81-86 of the Plaintiffs' petition, Plaintiffs accuse the defendants, including Health Net, of defrauding the Regulators, misleading the Regulators and making misrepresentations to the Regulators regarding the financial condition of the AmCare HMOs, the capital structure of the AmCare HMOs, the cash payment to Health Net in consideration of the sale of the AmCare HMOs, and the termination of the Guarantee referred to in paragraph 117(a).
197.
Plaintiffs then allege that, if the Regulators, including the Louisiana Department of Insurance, had not been defrauded, misled and the subject of misrepresentations with respect to the financial condition of the AmCare HMOs, then the Regulators would have taken action to place the AmCare HMOs into receivership and liquidate the AmCare HMOs sooner, and thereby the deepening insolvency of the AmCare HMOs would have been avoided.
198.
The Regulators, including the Louisiana Department of Insurance, had a duty to comply with and enforce applicable law and regulations, including the Louisiana Insurance Code and applicable regulations, in monitoring the financial stability of the AmCare HMOs.
199.
Upon information and belief, both before and after the year 2000, the Regulators, including the Louisiana Department of Insurance, were aware of substantial and pervasive financial problems with the AmCare HMOs, but failed to take any steps to address and correct those financial problems and protect the policy holders, creditors, shareholders, and general public.
200.
In fact, Regulators, including the Louisiana Department of Insurance, were fully aware of the poor financial condition of the AmCare HMOs, including the millions of dollars in bogus intercompany *1235 receivables recorded on the financial statement of the AmCare HMOs.
201.
Upon information and belief, after 1999, the Regulators, including the Louisiana Department of Insurance, had constructive knowledge of facts indicating that no reasonable basis existed for a representation that AmCare HMOs were solvent.
202.
Upon information and belief, the Regulators, including the Louisiana Department of Insurance, in violation of applicable law and regulations, failed to perform an investigation as to the collectibility of the bogus intercompany receivables. If the Regulators had performed even the most cursory of investigations during the year 2000, the Regulators would have determined that there was no basis for the intercompany receivables, that the intercompany receivables were uncollectible, and that the AmCare HMOs were insolvent.
203.
Upon information and belief, the Regulators, including the Louisiana Department of Insurance, engaged in a pattern of stop gap measures to attempt to keep the AmCare HMOs in business, all of which allowed the continued depletion of the assets of the AmCare HMOs, which breached the duty of care and the duty to enforce the applicable law and regulations owed by the Regulators to the policyholders, creditors, general public, and shareholders.
204.
Instead, in violation of mandatory applicable law and regulations which directed the Regulators to place the AmCare HMOs into receivership, the Regulators, including the Louisiana Department of Insurance, negligently ignored the declining financial condition of the AmCare HMOs, and negligently permitted the AmCare HMOs to continue to operate to the detriment of the shareholders (including Health Net), creditors, policyholders, and the citizens of the states of Louisiana, Oklahoma and Texas.
205.
Accordingly, the Regulators, including the Louisiana Department of Insurance, negligently enforced and/or negligently failed to enforce applicable law and regulations.
206.
Upon information and belief, the breaches of duty by the Regulators, including the Louisiana Department of Insurance, resulted in significant damages including, but not limited to, the fact the AmCare HMOs were made more deeply insolvent than they might have been had they been placed in receivership, thereby resulting in greater losses to the policyholders, creditors, shareholders (like Health Net) and the general public.
* * *
209.
Health Net relied upon the representations made by Louisiana Department of Insurance as to the solvency of AmCare-LA to its detriment, and is therefore entitled to recovery against Louisiana Department of Insurance for any and all damage it may suffer due to its detrimental reliance.

*1236 210.
PRAYER FOR RELIEF ON THIRD PARTY CLAIM
WHEREFORE, in the event Health Net is found liable to the Plaintiffs and the Louisiana Department of Insurance is also found at fault, Health Net prays that the Louisiana Department of Insurance be named herein be [sic] cited to appear and answer, and that upon a final hearing of the cause, judgment be entered for Health Net and against the Louisiana Department of Insurance for indemnity and/or contribution, for damages, for reasonable attorneys' fees, interest at the applicable rate from the date the original demand was filed against Health Net, costs of court, and for such other and further relief to which Health Net may be entitled. [Emphasis added.]

THE CAUSES OF ACTION
In these appeals, Health Net asserts causes of action against DOI alleging governmental negligence (tort) and detrimental reliance (contract). Obligations arise from contracts or by operation of law.[9] La. C.C. art. 1757. Tort obligations are those that arise by operation of law (without agreement). The general tort law of La. C.C. art. 2315 et seq. is located in Chapter 3 (Of Offenses and Quasi Offenses) of Title V (Obligations Arising Without Agreement) of Book III of the Civil Code. Detrimental reliance obligations arise from La. C.C. art. 1967. Article 1967 was enacted by 1984 La. Acts, No. 331, effective January 1, 1985, and is located in Chapter 5 (Cause) of Title IV (Conventional Obligations or Contracts) of Book III of the Civil Code.

INTERPRETATION OF LAWS[10]
Louisiana Civil Code article 1967 and Louisiana Civil Code articles 2315, et seq. are the laws (legislation) that pertain to the remaining causes of action alleged in this third party demand. A proper interpretation of these and other pertinent laws is essential to a correct disposition of Health Net's assignments of error. The following rules of statutory construction are relevant.
La. R.S. 24:177 is entitled "Legislative intent; text, history, and other indices of intent" and provides, in pertinent part, as follows:
A. When the meaning of a law cannot be ascertained by the application of the provisions of Chapter 2 of the Preliminary Title of the Louisiana Civil Code and Chapter 1 of Title 1 of the Louisiana Revised Statutes of 1950, the court shall consider the intent of the legislature.
B. (1) The text of a law is the best evidence of legislative intent.
* * *
C. The legislature is presumed to have enacted an article or statute in light of the preceding law involving the same subject matter and court decisions construing those article or statutes, and where the new article or statute is worded differently from the preceding law, *1237 the legislature is presumed to have intended to change the law.
Chapter 2 of the Preliminary Title of the Louisiana Civil Code is entitled "Interpretation of Laws" and is comprised of La. C.C. arts. 9 through 13. Chapter 1 of Title 1 of the Louisiana Revised Statutes is entitled "Interpretation of the Revised Statutes" and is comprised of La. R.S. 1:1 through 17. When construing a law or a constitutional provision, the word "shall" is universally considered to mean mandatory and the word "may" is universally considered to mean permissive (discretionary). La. R.S. 1:3; La. C.C.P. art. 5053; La. C. Cr. P. art. 5; La. Ch. C. art. 7.
Accordingly, the interpretation (construction) of a law or a constitutional provision must start by applying the rules found in the designated provisions of the Civil Code and the Revised Statutes to the language of the law or the constitutional provision at issue. P. Lamonica & J. Jones, 20 La. Civ. Law Treatise, Legislative Law and Procedure, § 7.4, pp. 136-38 (2004), and the authorities cited therein.
Finally, laws on the same subject matter must be interpreted in reference to each other. La. C.C. art. 13; Detillier v. Kenner Reg. Med. Cent., XXXX-XXXX, p. 4 (La.7/6/04), 877 So.2d 100, 103.

THE DETRIMENTAL RELIANCE CAUSE OF ACTION (ASSIGNMENT OF ERROR 1)
Health Net asserts the trial court erred by sustaining DOI's peremptory exception raising the objection of no cause of action and dismissing its cause of action based on detrimental reliance.
In brief, Health Net asserts the following:
Health Net's Third Party Claim alleged numerous facts which establish that LDIs [DOI] actions represented to Health Net that it was permissible to sell the Louisiana HMO to AmCareCo, and that the cash payment that Health Net received in conjunction with the sale was legal. Based on this reliance, Health Net sold the Louisiana HMO to AmCareCo, and was paid monies from the Louisiana HMO as part of the cash payment. Later, Health Net was sued by AmCare-LA claiming both that Health Net should not have sold the Louisiana HMO and that the cash payment was improper.
LDI represented, through its conduct of approving all aspects of the financial transactions of the Louisiana HMO, that the transactions were legally permissible (including that the HMO was indeed statutorily solvent). Health Net was entitled to rely on LDI as the regulatory agency responsible for ensuring that insurance companies doing business in Louisiana comply with all applicable laws. Because actions taken by Health Net were approved by LDI, Health Net was entitled to rely on that approval, and to seek damages arising from LDI's failure to properly perform its regulatory functions. Because approval by LDI served as an indication that the financial transactions involving the Louisiana HMO were lawful under Louisiana law, Health Net's allegations of justifiable reliance are sufficient. Health Net sold the Louisiana HMO based on the approval by LDI that everything was proper. Now, because of the sale of the Louisiana HMO, Health Net has been found liable for damages that were allegedly caused by the sale. (Citations to the record deleted.)
DOI has responded in brief, in pertinent part, as follows:
The Louisiana codal article which provides for detrimental reliance is La. C.C. art. 1967, which is found in the section of *1238 the Louisiana Civil Code governing contractual obligations. As such, a claim of detrimental reliance can only be brought where there was either a contractual or quasi  contractual relationship of some sort.
There is no contractual or quasi-contractual relationship between Health Net and DOI, or indeed any privity between these two entities, as La. C.C. Art. 1967 and the two cases cited by Appellant require. Thus, there is no basis for Health Net to contend that its supposed reliance on any representations made by DOI officials was justified.
The cause of action for detrimental reliance is provided for in La. C.C. art. 1967 as follows:
Art. 1967. Cause defined; detrimental reliance
Cause is the reason why a party obligates himself.
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
The following are the elements of this cause of action:
(1) the defendant (promisor) made a promise to the plaintiff (promisee);
(2) the defendant knew or should have known that the promise would induce the plaintiff to rely on it to his detriment;
(3) the plaintiff relied on the promise to his detriment;
(4) the plaintiff was reasonable in relying on the promise; and
(5) the quantum of the damages sustained if specific performance is not selected as a remedy.[11]
For an excellent review of the jurisprudential cause of action for detrimental reliance that existed prior to the enactment of Article 1967 see Morris v. Friedman, 94-2808 (La.11/27/95), 663 So.2d 19. The elements of the jurisprudential cause of action were (1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of the reliance. This language and these elements are substantially different from those of Article 1967. Thus, by analogy, and pursuant to La. R.S. 24:177 C, it must be presumed that the legislature intended to change the "law" with the enactment of Article 1967.
The first element of proof of the Article 1967 detrimental reliance cause of action is that a promise was given by the defendant to the plaintiff.
Pursuant to La. C.C. art. 11 "[t]he words of a law must be given their generally prevailing meaning." (Emphasis *1239 added.) Pursuant to La. R.S. 1:3 "[w]ords and phrases shall be read with their context and shall be construed according to the common and approved usage of the language." (Emphasis added.)
In BLACK'S LAW DICTIONARY 1228-29 (7th ed.1999), the noun "promise" is defined as "[t]he manifestation of an intention to act or refrain from acting in a specified manner, conveyed in such a way that another is justified in understanding that a commitment has been made; a person's assurance that the person will or will not do something. A binding promise  one that the law will enforce  is the essence of a contract." (Emphasis added.) In MIRIAM-WEBSTER'S COLLEGIATE DICTIONARY 933 (10th ed.1993), the noun "promise" is defined as "1 a: a declaration that one will do or refrain from doing something specified b: a legally binding declaration that gives the person to whom it is made a right to expect or to claim the performance or forbearance of a specified act." (Emphasis added.) In H. Johnson, 18 La. Civ. Law Treatise 2d, Civil Jury Instructions, § 19.08, p. 401 (2001), a promise is defined as follows:
A promise is a declaration which binds the person who makes it, either in conscience or law, to do a specific thing, which then gives to the other person a right to expect or claim the performance of that thing. Another definition of a promise is that it is an offer which is definite and certain and which the promisor intends to be binding. A promise must be clear and unambiguous in order to be enforceable. The mere expression of an intention is not a promise. (Emphasis added.)
Pursuant to La. C.C. art. 9 "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." (Emphasis added.) Pursuant to La. R.S. 1:4 "[w]hen the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." (Emphasis added.) The meaning of the noun "promise" in the context it is used in Article 1967 is clear and unambiguous. As a matter of law, the actions and declarations of DOI in following, applying and executing its statutory powers and regulatory functions are not promises for Article 1967 detrimental reliance and public contract purposes. Because there is no promise by DOI in favor of Health Net as a matter of law, Health Net's claim for detrimental reliance is legally nonexistent. La. C.C.P. art. 923; cf. Oliver v. Cent. Bank, 26,932, pp. 11-12 (La.App. 2 Cir. 5/10/95), 658 So.2d 1316, 1323, writ denied, 95-1469 (La.9/22/95), 660 So.2d 477; Carter v. Humber & Heard, Inc., 95-0142, pp. 3-4 (La.App. 3 Cir. 5/31/95), 657 So.2d 409, 411-12.
This assignment of error is without merit.
THE RIGHT TO A THIRD PARTY DEMAND FOR THE GOVERNMENTAL TORT CAUSE OF ACTION (ASSIGNMENT OF ERROR 1)
Health Net asserts the trial court erred by sustaining DOI's peremptory exception raising the objection of no cause of action and dismissing its cause of action based on governmental tort.
In its original brief, Health Net asserts the following:
Health Net's allegations in the Third Party Demand, which had to be accepted as true in considering the exception of no cause of action, were that LDI [DOI] breached all of these duties by failing to comply with and properly enforce the Louisiana Insurance Code *1240 when it failed to adequately monitor the financial stability of the AmCare HMOs. To prove these allegations, Health Net had evidence that LDI failed to take action when AmCare-LA failed to provide CPA audited reports as required by La. R.S. 22:2008(3) for the years 2000 and 2001; LDI failed to take action when the CPA audited report for 1999 warned LDI that AmCare-LA's was in such poor financial condition it may go out of business in less than 12 months; LDI failed to require AmCare-LA to maintain a minimum of $4 million of capital and surplus; LDI failed to make an examination of the financial affairs of AmCare-LA at least once every three years; LDI failed to suspend or revoke the certificate of authority of AmCare-LA during the years 2000 and 2001  in spite of the impaired financial condition of the HMO; LDI failed to determine the collectibility of and write down intercompany loans and receivables.
* * *
Similarly, LDI breached its duty through negligent enforcement of the policies and provisions of the Louisiana Insurance Code by failing to adequately monitor the financial state of AmCare-LA. Thus, Health Net's third party demand stated a cause of action in negligence against LDI, and the trial court erred in sustaining the exception.
Analysis of policy considerations bolsters the finding of a duty here under Louisiana's duty-risk analysis. Imposing a duty would likely (1) diminish the number of suits filed against LDI, (2) diminish the number of failed insurance companies, and (3) diminish the number of claims by creditors, providers and policyholders if HMOs are timely placed in receivership. By forcing LDI to properly administer the insurance code, insurance companies will be more closely scrutinized, resulting in the protection of policyholders and creditors from financially unstable HMOs that are unable to pay claims, and protecting the general public from the negligent monitoring of the financial condition of Louisiana insurance companies in the future.
* * *
In summary, Health Net pled the following: (1) LDI had a duty to comply with and enforce applicable law and regulations in monitoring the financial stability of the AmCare HMOs; (2) LDI was aware of the financial problems with the AmCare HMOs, but failed to take any steps to correct those problems; (3) LDI was aware of millions of dollars of bogus intercompany receivables recorded on the financial statements of the AmCare HMOs; (4) LDI had constructive knowledge that the AmCare HMOs were insolvent; (5) contrary to law, LDI failed to perform an investigation as to the collectibility of the bogus intercompany receivables; (6) LDI permitted the AmCare HMOs to stay in business in violation of the Insurance Code and regulations, thereby allowing the assets of the AmCare HMOs to be depleted; (7) LDI negligently failed to enforce applicable laws and regulations; and (8) the breaches of duty by LDI caused the AmCare HMOs to be more deeply insolvent than they might have been had they been placed in receivership at an earlier date. (Footnotes and references to the record deleted. Emphasis added.)
In a supplemental memorandum Health Net asserts that in its third party demand it has ". . . sought damages from LDI [DOI] based on negligence and detrimental reliance . . .", that its ". . . third party demand clearly stated a cause of action for negligence and detrimental reliance . . ." *1241 and that it ". . . does have a right of action to pursue the claims for negligent regulation and detrimental reliance . . . ".
(Emphasis added.)
Subsequently in the supplemental memorandum Health Net stated the following:
Furthermore, Health Net's third party demand against LDI does not involve any actions by LDI in its role as liquidator of AmCare Health Plans of Louisiana, Inc. ("AmCare-LA"). Rather, Health Net's third-party demand relates to actions that LDI took  or in this case failed to take  prior to the rehabilitation and liquidation of AmCare-LA. Health Net is not objecting to the actions of the Commissioner purportedly in furtherance of the liquidation order. Instead, all of the actions complained of by Health Net occurred prior to the liquidation order. Consequently, the statutory scheme for the rehabilitation and liquidation of insurers does not prohibit Health Net from asserting its claims for damages that occurred prior to the liquidation of AmCare-LA.

The Legal Relations Between Health Net and DOI
These consolidated actions (principal demands) were brought by the Commissioner in his capacity as the liquidator of AmCare-LA. The amended petitions asserted causes of action in tort and contract. Health Net was named one of many parties-defendant. For the governmental tort cause of action AmCare-LA is the plaintiff-obligee and Health Net is a defendant-obligor.
Health Net filed this third party demand against DOI asserting causes of action for governmental tort, detrimental reliance, indemnity and contribution. For these causes of action Health Net is the plaintiff-obligee and DOI is the defendant-obligor.
As previously indicated, during the trial of DOI's peremptory exception, Health Net conceded that its claims for indemnity and contribution were not valid. These causes of action were dismissed with prejudice in the trial court's written judgment that dismissed the entire third party demand. Health Net has not assigned or briefed error concerning these two components of the trial court judgment. Uniform Rules-Courts of Appeal, Rule 1-3 and Rule 2-12.4. These judgments are definitive. Cf. La. C.C.P. arts. 2166 and 2167.
A third party demand is an incidental demand provided for in La. C.C.P. arts. 1111, et seq. Article 1111 provides, in pertinent part, that "(t)he defendant in a principal action by petition may bring in any person . . . who is or may be liable to him for all or part of the principal demand." (Emphasis added.) Thus, Health Net, as a third party plaintiff-obligee, must allege that DOI, as a third party defendant-obligor, is liable to it (Health Net) for all or part of the principal demand by AmCare-LA against it (Health Net). In this procedural posture, Health Net must allege that as a matter of fact and law DOI and it are co-obligors of AmCare-LA and DOI is liable to it because of this legal relationship. If DOI is not liable to Health Net for all or part of the principal demand as a matter of law, then Health Net has no cause of action for the third party demand.

Obligations with Multiple Persons in General
When an obligation binds more than one obligor to one obligee, the obligation may be several, joint or solidary. La. C.C. art. 1786. When different obligors owe together just one performance to one obligee, but neither is bound for the whole, the obligation is joint for the obligors. La. C.C. art. 1788. When a joint obligation is divisible, *1242 each joint obligor is bound to perform only his portion. La. C.C. arts. 1789 and 1815. An obligation is solidary for the obligors when each obligor is liable for the whole performance. La. C.C. art. 1794. Among solidary obligors, each is liable for his virile portion, and, if the obligation arises from an offense or quasi-offense, a virile portion is proportionate to the fault of each obligor. La. C.C. art. 1804. La. C.C. art. 1805 provides as follows:

A party sued on an obligation that would be solidary if it exists may seek to enforce contribution against any solidary co-obligor by making him a third party defendant according to the rules of procedure, whether or not that third party has been initially sued, and whether the party seeking to enforce contribution admits or denies liability on the obligation alleged by plaintiff. (Emphasis added.)
The third party action is customarily used to enforce solidary obligations arising from contribution and indemnity. W. Crawford, 12 La. Civ. Law Treatise, Tort Law, § 8.3, pp. 135-36 (2000). See generally S. Litvinoff, 5 La. Civ. Law Treatise, Obligations, §§ 7.23, 7.61, 7.66 and 7.78, pp. 127-28, 142-43, 140-50 and 165-66 (2001).

Obligations with Multiple Tort Obligors
In paragraph 195 of its third party demand, Health Net avers that the third party demand "is asserted in the alternative in the event that Health Net is found liable for damages to the Plaintiffs and the third party defendant is also found at fault." Subsequent allegations assert that DOI "negligently enforced and/or negligently failed to enforce applicable law and regulations," this negligent conduct "resulted in significant damages including, but not limited to, the fact the AmCare HMOs were made more deeply insolvent than they might have been had they been placed in receivership, thereby resulting in greater losses to" Health Net and prayed that "in the event Health Net is found liable to the Plaintiffs and the Louisiana Department of Insurance is also found at fault judgment be entered for Health Net and against the Louisiana Department of Insurance for . . . damages."[12] The essence of these pleadings is that the negligence of DOI aggravated the damages caused by the alleged fault of Health Net and DOI and Health Net are co-obligors for purposes of the third party demand.
The legal relations between DOI and Health Net as co-obligors for governmental tort liability are provided for in La. C.C. arts. 2323 and 2324.[13] La. C.C. art. 2323 provides as follows:
A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the *1243 injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.
C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced. (Emphasis added.)
Louisiana Civil Code article 2324 provides as follows:
A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.
B. If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable.
C. Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors. (Emphasis added.)
In Dumas v. State, Dep't of Culture, Recreation & Tourism, XXXX-XXXX (La.10/15/02), 828 So.2d 530, the decedent received a large laceration to his scalp when he hit a pothole and crashed on a park road while riding his bicycle. He went to a local hospital where he received medical treatment but died several hours later. His wife and children filed wrongful death and survival actions against the State asserting governmental tort negligence. The State filed an answer which included an affirmative defense alleging that the fault of third parties at the hospital was a cause of the decedent's death for which the State was not jointly liable. At Dumas, XXXX-XXXX, pp. 11-12 and 15, 828 So.2d at 537 and 539, the Louisiana Supreme Court construed La. C.C. arts. 2323 and 2324 and defined the legal relations of the State and the third party co-obligor hospital as follows:
We find the language of Articles 2323 and 2324(B), as amended by Act 3, is clear, unambiguous, and does not lead to absurd consequences. Article 2323 provides that "[i]n any action for damages . . . , the degree of percentage of fault of all persons causing or contributing to the injury, death or loss shall be determined, regardless of whether the person is a party to the action or a nonparty. . . . The [foregoing] provisions . . . shall apply to any claim . . . asserted *1244 under any law or legal doctrine or theory of liability, regardless of the basis of liability." (Emphasis added.) Thus, this article clearly requires that the fault of every person responsible for a plaintiff's injuries be compared, whether or not they are parties, regardless of the legal theory of liability asserted against each person.
Likewise, the language of Article 2324(B) is equally clear. It provides that in non-intentional cases, liability for damages caused by two or more persons shall be a joint and divisible obligation. Each joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of that other person. This provision abolishes solidarity among non-intentional tortfeasors, and makes each non-intentional tortfeasor liable only for his own share of the fault, which must be quantified pursuant to Article 2323.
* * *
The factfinder in the instant case is required to determine the percentage of fault of all persons causing injury to plaintiffs. If the factfinder concludes that plaintiffs' damages were caused by more than one person, then each joint tortfeasor is only liable for his degree of fault and cannot be held solidarily liable with another tortfeasor for damages attributable to that other tortfeasor's fault. The State in this case is therefore entitled to present, as an affirmative defense, evidence relating to the fault of another person it believes caused injury to plaintiffs. Consequently, we find that plaintiffs' motion to strike the State's amended answer on the basis that it is immaterial, irrelevant, and insufficient should be denied. (Footnotes deleted. Emphasis added.)
See also Hamway v. Braud, 2001-2364 (La.App. 1 Cir. 11/8/02), 838 So.2d 803. The liability for damages of negligent co-obligors is joint and divisible. Pursuant to La. C.C. art. 2324 B, such co-obligors are not liable in solido with anyone and each pays only in accordance with the share of fault attributed to him. H. McMahon & A. Rubin, 10 Code of Civil Procedure  Pleadings and Judicial Forms Annotated (1996), 2007 Cumulative Annual Pocket Part, W. Crawford, Commentary (preceding Form 311); The Revision of Tort Law by the Extraordinary Session of 1996, pp. 20-21 (2006); H. Johnson, 18 La. Civ. Law Treatise, Civil Jury Instructions, §§ 15.01 and 15.02, pp. 330-34 (2d ed.2001).
Pursuant to La. C.C.P. art. 1111, a third party plaintiff must allege and prove that a third party defendant is liable to him for all or part of the principal demand to be successful.
Health Net alleges that DOI is liable to it for damages for the non-intentional fault of negligence. Pursuant to Louisiana Civil Code articles 2323 and 2324 and the jurisprudence interpreting them, this claim is without conceptual foundation as a matter of law. Each co-obligor in a joint and divisible obligation involving negligence only pays that portion of the plaintiff's damages which corresponds to the percentage of negligence attributed to that co-obligor. If a co-obligor is not a party to the principal demand, as in the instant case, the percentage of negligence of the co-obligors who are parties to the principal demand will be reduced by the amount of negligence assigned to the non-party co-obligor; no damage award can be paid directly to a co-obligor like Health Net when the obligation is joint and divisible.
Very simply, based on the facts alleged DOI is not liable to Health Net for all or part of the principal demand as a matter of *1245 law, and accordingly, Health Net has alleged no cause of action for the third party demand.

The Affirmative Defense of Division
An obligation is divisible when the object of the performance is susceptible to division. La C.C. arts. 1815 and 1817. The remedy (plea) of division requires the obligee to divide his claim against obligors and collect it as if each of the obligors was liable only for his virile portion. Central Bank v. Winn Farmers Co-Operative, 299 So.2d 442, 445 (La.App. 2 Cir.1974), writ refused, 302 So.2d 310 (La.1974). Division is an affirmative defense provided for in La. C.C.P. art. 1005. Pursuant to La. C.C.P. art. 1003, the defendant's answer "shall set forth all affirmative defenses as required by Article 1005." The Dumas case recognized that the division as provided for in La. C.C. art. 2324 B properly can be set forth as an affirmative defense.
Health Net's twenty-first affirmative defense in its answer provides as follows:
Recovery, if any, by Plaintiffs should be barred or reduced by the proportionate fault of (1) Plaintiffs, (2) other defendants and/or (3) third parties to the extent said parties caused or contributed to the alleged acts, events, incidents or happenings, and the alleged injuries or damages.
See also affirmative defenses eleven and thirty-nine. These pleadings are pleas for division.
Finally, La. C.C.P. art. 1005 provides, in pertinent part, that, "(i)f a party has mistakenly designated an affirmative defense as an incidental demand, . . . the court, on such terms as it may prescribe, shall treat the pleading as if there had been a proper designation." A third party demand is an incidental demand. La. C.C.P. art. 1031. Pursuant to the authority of Article 1005, we shall treat the allegations of Health Net's third party demand as a plea for division and order its consideration referred to the merits.
Although the trial court correctly dismissed this pleading as a third party demand, it committed error by failing to comply with Article 1005 by not designating the allegations of governmental tort as an affirmative defense. Accordingly, the judgment dismissing the third party demand for governmental tort with prejudice is amended to provide that the dismissal is without prejudice.

REMAND TO ALLOW AMENDMENT (ASSIGNMENT OF ERROR 2)
Health Net asserts "[t]he trial court erred in not allowing Health Net a period of time to amend its third party demand against the Louisiana Department of Insurance to state a cause of action for damages based on negligence and detrimental reliance" citing La. C.C.P. art. 934 and the jurisprudence construing it.
The judgment of the trial court sustaining the objection of no cause of action to the detrimental reliance claim has been affirmed because "[a]s a matter of law, the actions and declarations of DOI in following, applying and executing its powers and regulatory functions are not promises for Article 1967 detrimental reliance and public contract purposes." Accordingly, pursuant to La. C.C.P. art. 934, the ground for the objection cannot be removed by amendment and this claim was properly dismissed.
In the third party demand for governmental tort, Health Net asserts that DOI was negligent. In this factual posture, the legal relationship between them as co-obligors is provided for in La. C.C. art. 2324 B and it is a joint and divisible obligation.
*1246 Pursuant to La. C.C. art. 2324 A, if an intentional or willful tort is committed involving co-obligors, the legal relationship between them is a solidary obligation. When there is a solidary obligation, each co-obligor is liable for the whole performance and for his virile share and each co-obligor may enforce contribution from other co-obligors in a third party demand. La. C.C. arts. 1804 and 1805. In this procedural posture, the third party defendant co-obligor is liable to the third party plaintiff co-obligor for the purposes of a third party demand.
In the instant case, Health Net conceded that it was not entitled to contribution for third party demand purposes. Implicit in this concession is that the legal relationship between it and DOI as co-obligors does not involve a solidary obligation. If the relationship does not involve a solidary obligation for co-obligors, it is not based on an intentional or willful act as provided for in La. C.C. art. 2324 A.
The judgment that dismissed the contribution claim extinguished "all causes of action existing at the time of final judgment arising out of the transaction or occurrence that [was] the subject matter" of the contribution cause of action alleged in the petition of the third party demand. La. R.S. 13:4231(2). This judgment extinguished the claim for an intentional or willful governmental tort cause of action and it is now definitive. Accordingly, as a matter of law the petition for the governmental tort cause of action against DOI in the third party demand can not be amended to state a cause of action by alleging a willful or intentional act.
This assignment is without merit.

DECREE
For the foregoing reasons, the judgment of the trial court dismissing the third party demand asserting the detrimental reliance cause of action with prejudice is affirmed; the judgment of the trial court dismissing the third party demand asserting the governmental tort cause of action with prejudice is amended to provide that the dismissal is without prejudice, and, as amended, is affirmed; and it is ordered that the allegations of Health Net's third party demand petition insofar as they pertain to a governmental tort cause of action shall be retained as an affirmative defense and construed as a plea for division to be considered on the merits.
Health Net is cast for the cost of this appeal.
AFFIRMED AS AMENDED WITH ORDER.
NOTES
[1] The Hon. Philip C. Ciaccio, Judge (retired), the Hon. Walter I. Lanier, Jr., Judge (retired), and the Hon. Ian W. Claiborne, Judge (retired), are serving as judges ad hoc by special appointment of the Louisiana Supreme Court.
[2] AmCare-LA and the other AmCare entities were health maintenance organizations (HMOs) licensed in their respective states.
[3] In brief, Health Net stated that "Health Net conceded that, under the law as it presently exists, it had no claims of indemnity and contribution. . . ." No assignment of error has been asserted concerning the indemnity and contribution rulings. This judicial confession constitutes full proof against Health Net as to these claims. La. C.C. art. 1853; F. Maraist, 19 La. Civ. Law Treatise, Evidence and Proof, § 4.5, pp. 61-62 (1999).
[4] See F. Maraist & H. Lemmon, J La. Civ. Law Treatise, Civil Procedure, § 6.7(2), pp. 122-27 (1999).
[5] The objection of no cause of action does not address (1) who may assert the cause of action (no right of action), La. C.C.P. art. 927 A(5); (2) whether the cause of action has accrued (prematurity), La. C.C.P. arts. 423 and 926 A(1); or (3) whether the cause of action has been extinguished by an affirmative defense, La. C.C.P. art. 1005.
[6] Paragraphs 207 and 208 of the third party demand pertaining to the indemnity and contribution causes of action have been omitted.
[7] The `D & O Defendants' refers to certain individuals who served as directors and/or owners of the HMOs and who were named as defendants in the petition in one of the consolidated actions. No claims as to these individuals are at issue in this appeal.
[8] These persons were named as defendants in the petition filed in one of the consolidated actions. No claims as to these individuals are at issue in this appeal.
[9] The general effects of an obligation are provided for in La. C.C. art. 1758.
[10] The sources of law are legislation and custom. La. C.C. art. 1. Legislation is a solemn expression of legislative will. La. C.C. art. 2. (It is not the solemn expression of executive or judicial will.) Custom may not abrogate legislation. La. C.C. art. 3. A court may proceed according to equity only when no rule for a particular situation can be derived from legislation or custom. La. C.C. art. 4; Morris v. Friedman, 94-2808, p. 8 (La.11/27/95), 663 So.2d 19, 26.
[11] La. C.C. art. 1967 Revision Comments  1984 (e). Magic Moments Pizza v. Louisiana Rest. Assoc., XXXX-XXXX, p. 4 (La.App. 5 Cir. 5/29/02), 819 So.2d 1146, 1149; Dugas v. Guillary, 97-0398, pp. 9-11 (La.App. 3 Cir. 10/7/98), 719 So.2d 719, 724-725; Schell v. NK Enters., Inc., 96-0362, pp. 3-4 (La.App. 5 Cir. 1/15/97), 688 So.2d 68, 71; Academy Mortgage Co. v. Barker, Boudreaux, Lamy, & Foley, 96-0053, pp. 3-4 (La.App. 4 Cir. 4/24/96), 673 So.2d 1209, 1211-12; Morris v. People's Bank & Trust Co. of Natchitoches, 580 So.2d 1029, 1036 (La.App. 3 Cir.1991), writ denied, 588 So.2d 101, 102 (La.1991); H. Johnson, 18 La. Civ. Law Treatise 2d, Civil Jury Instructions, § 1908, pp. 400-02 (2001); S. Herman, Detrimental Reliance in Louisiana Law  Past, Present and Future (?): The Code Drafter's Perspective, 58 TUL. L. REV. 707, 717-21 (1984).
[12] The various statutes and regulations cited by Health Net refer to the Commissioner who is not a party to the third party demand; the statutes and regulations do not refer to DOI who is a party to this third party demand. DOI is a body corporate with the power to sue or be sued. La. R.S. 36:681 A. Accordingly, it is an entity to which the law attributes personality and is a juridical person within the purview of La. C.C. art. 24. See also Revision Comments  1987(c) and (d) for Article 24. The existence of DOI as a juridical person is separate and distinct from that of the Commissioner as a natural person (a human being) who has a private capacity and a public capacity. This does not affect Health Net's cause of action because pursuant to La. R.S. 36:681 B DOI "shall be responsible for performing the functions of the commissioner of insurance and such other functions as are provided by law."
[13] Articles 2323 and 2324 are implemented by La. C.C.P. art. 1812 C.