STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2020 CA 0952

ANTHONY MASITA[1]

VERSUS

JOHN MAUMOULIDES,[2] LAKELOTS, INC.; INTREPID, INC.; ONE CONSORT INTERNATIONAL, LLC; LAKE RAMSEY DEVELOPMENT AND ST. TAMMANY PARISH

*CONSOLIDATED WITH*

2020 CA 0953

ANTHONY MISITA AND GLENN AND LINDA TORRES

VERSUS

THE ST. TAMMANY PARISH GOVERNMENT

*DATE OF JUDGMENT:*   NOV 1 5 2021

ON APPEAL FROM THE TWENTY-SECOND JUDICIAL DISTRICT COURT NUMBER 2013-14638 C/W 2018-10697, DIVISION C, PARISH OF ST. TAMMANY, STATE OF LOUISIANA

HONORABLE RICHARD A. SWARTZ, JUDGE

\* \* \* \* \* \*

| | |
|---|---|
| Louis R. Koerner, Jr.<br>New Orleans, Louisiana<br>Pierre V. Miller, II<br>New Orleans, Louisiana | Counsel for Plaintiffs-Appellants<br>Anthony Misita and Glenn and<br>Linda Torres |
| Thomas Hebert Huval<br>Covington, Louisiana | Counsel for Defendants-Appellees<br>John Mamoulides, Lakelots, Inc., |

---

[1] Although his surname was incorrectly spelled in the original case caption, throughout the opinion this party plaintiff is correctly identified as "Misita."

[2] Although his surname was incorrectly spelled in the original case caption, throughout the opinion this party defendant is correctly identified as "Mamoulides."

Thomas Hebert Huval
Covington, Louisiana

Counsel for Defendants-Appellees
John Mamoulides, Lakelots, Inc.,
Intrepid, Inc., Lake Ramsey
Development, Artesian Utility
Company, Inc., David Guidry

Morgan J. Wells, Jr.
Evan J. Godofsky
Metairie, Louisiana

Counsel for Defendant-Appellee
One Consort International, LLC

Kelly M. Rabalais
Covington, Louisiana
Angel L. Byrum
Deborah Spiess Henton
Mandeville, Louisiana

Counsel for Defendant-Appellee
St. Tammany Parish Government

Thomas P. Anzelmo, Sr.
Kevin P. Kress
Katherine L. Swartout
New Orleans, Louisiana

Counsel for Defendants-Appellees
St. Tammany Parish, Paul Carroll,
Kevin Davis, Joey Lobrano, Brian
Fortson, James A. (Red) Thompson

Willard O. Lape, III
Covington, Louisiana

Counsel for Defendant-Appellee
Homeowners Association of Lake
Ramsey, Inc. (HALRI)

Bailey D. Morse
Sam Joseph Collett, Jr.
John R. Walker
Covington, Louisiana

Counsel for Defendant-Appellee
Southeast Investments, LLC

\* \* \* \* \* \*

BEFORE:  WHIPPLE, C.J., WELCH, CHUTZ, WOLFE, and BURRIS,[1] JJ.

Disposition: APRIL 19, 2018 RULING AND AUGUST 5, 2019 JUDGMENT AFFIRMED. JANUARY 2, 2020 JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; REMANDED.

---

[1] The Honorable William J. Burris, retired, is serving *pro tempore* by special appointment of the Louisiana Supreme Court.

**CHUTZ, J.**

Plaintiffs-appellants, Anthony Misita, Glenn Torres, and Torres's wife, Linda, appeal the trial court's January 2, 2020 judgment that granted (1) a motion to strike plaintiffs' motions for partial summary judgment; (2) a motion for summary judgment, in part, in favor of defendant-appellee, St. Tammany Parish Government (STPG) and individual STPG representatives defendants-appellees, Paul Carroll, Kevin Davis, Joey Lobrano, Brian Fortson,[4] and James A. "Red" Thompson, dismissing detrimental reliance claims against STPG and all claims against the individual STPG representative defendants; and (3) a motion for summary judgment in favor of defendants-appellees, John Mamoulides and David Guidry, dismissing all of plaintiffs' claims against them. Additionally, plaintiffs seek review of two additional rulings, rendered on April 19, 2018 and August 5, 2019, which twice denied them leave to file fourth amendments to their petition. After review, we affirm the April 19, 2018 and August 5, 2019 rulings; affirm in part and reverse in part the January 2, 2020 judgment; and remand this matter for additional proceedings.

### I. FACTUAL AND PROCEDURAL HISTORY

This litigation involves protracted proceedings arising from claims of an alleged manipulation of the natural hydrology of the Lake Ramsey area of St. Tammany Parish and the resultant flooding of the land upon which plaintiffs work and reside. For purposes of this appeal, we limit our focus to the facts necessary for a disposition of the complaints raised in this appeal.

According to the petition and the undisputed evidence, Major Lane is a cul-de-sac, with Misita's property located adjacent to the north and the Torreses' property located south of Major Lane. The eastern boundary of the Torreses'

---

[4] Although initially named as "Forstein," plaintiffs subsequently later correctly identified this defendant as Fortson.

property adjoins the western boundary of Phase IV of the Lake Ramsey Subdivision while the eastern boundary of Misita's property adjoins the western property line of Phase IV-A of the Lake Ramsey Subdivision. Misita's property and Phase IV-A are separated by a drainage/lateral canal. It is undisputed that the drainage lateral/canal is known as Stewart Road Lateral 1 (SRL-1). SRL-1 allows surface water to flow from the southeastern corner of Misita's property in a northerly direction for approximately 1600 feet to Stewart Road, where it turns east, skirts the northern side of Lake Ramsey, then proceeds south along the eastern side of Lake Ramsey until it joins back to Horse Branch Tributary of the Tchefuncte River.

Misita originally filed this lawsuit on October 2, 2013, alleging damages from flooding to his property located at 13185 Major Lane in St. Tammany Parish where he resides and operates a horse farm. He named as defendants John Mamoulides and One Consort International, LLC (OCI), among others, as the alleged developers of the land located to his east, averring that they caused his property to flood through violations of a servitude of natural drainage and commissions of torts. Misita claimed that since he moved onto the property and with the development of Phases IV and IV-A of the Lake Ramsey Subdivision, he has experienced increased flooding. Misita also averred that Mamoulides and defendant David Guidry, a subcontractor of OCI who occasionally acted as OCI's representative, made promises to him to stop the flooding of the Major Lane properties.[5]

Additionally, Misita named as defendants STPG and representatives Carroll, Davis, Lobrano, Fortson, and Thompson (collectively the STPG defendants),

---

[5] Guidry was added as a party defendant in the third amendment to the petition. Among the allegations against Guidry were that he acted as an agent for Artesian Utility Company, Inc., which was also named as a defendant.

4

averring that they had committed acts for which they were liable to him, including allegations that the STPG defendants acknowledged the Major Lane properties' flooding problems and promised to take action to fix them.

By amendment to Misita's petition, the Torreses were added as party plaintiffs in this lawsuit. According to plaintiffs' allegations, the Torreses reside at 13184 Major Lane in St. Tammany Parish and, like Misita, have experienced worsening flooding with continued development of Phase IV and IV-A in the Lake Ramsey Subdivision.

The STPG defendants, OCI, Mamoulides, and Guidry answered plaintiffs' lawsuit. Thereafter, they each filed a peremptory exception raising an objection of prescription. The STPG defendants and OCI subsequently stipulated that "they [would] only seek a dismissal of plaintiffs' claims for tort damages" in conjunction with the prescription exception. After a hearing, in a judgment dated April 16, 2018, the trial court sustained the exception "as to any alleged improper acts occurring more than one year prior to the filing of the original [p]etition," but overruled it "as to any alleged improper acts occurring within one year of the filing of the original [p]etition" on October 2, 2013.

On September 30, 2019, the STPG defendants filed a motion for summary judgment, seeking dismissal of all of plaintiffs' claims against them. Also on that date, Mamoulides and Guidry filed their own motion for summary judgment similarly seeking dismissal of all of plaintiffs' claims against them.[6] In response, plaintiffs filed opposition memoranda to which the STPG defendants replied.

---

[6] OCI also moved for summary judgment dismissal of all of plaintiffs' claims. The trial court denied OCI's motion, finding outstanding issues of material fact precluded summary judgment. OCI's application for a writ reviewing the propriety of the trial court's conclusion was denied by this court. See Misita v. St. Tammany Parish Gov't, 2019-1621 (La. App. 1st Cir. 5/12/20), 2020 WL 2461739.

On October 2, 2019, plaintiffs filed their own motions for partial summary judgment.[7] The STPG defendants, OCI, Mamoulides, and Guidry filed a joint motion to strike plaintiffs' untimely motions for partial summary judgment. A motion to continue the trial on the merits from December 2, 2019 to December 5, 2019 was then filed by plaintiffs, seeking additional time for the purpose of making the filing of their motions for partial summary judgment timely.

A hearing was held on all of the motions on October 31, 2019, after which the trial court issued written reasons for its rulings and rendered judgment.[8] In a judgment signed by the trial court on January 2, 2020, the joint motion to strike plaintiffs' motions for partial summary judgment was granted and plaintiffs' motion for a continuance was denied. The motion for summary judgment asserted by the STPG defendants was denied in part[9] and granted in part, dismissing all of plaintiffs' claims against the individual STPG representative defendants, as well as the detrimental reliance claims against STPG.[10] The motion for summary judgment

---

[7] The plaintiffs' motion for partial summary judgments against Mamoulides and Guidry was submitted at 11:11 p.m. on October 1, 2019 and file-stamped into the record on October 2, 2019. However, the record does not contain a copy of plaintiffs' motion for partial summary judgment directed at the STPG defendants. At the hearing on the motions, the parties represented to the trial court that two motions for partial summary judgment had been asserted by plaintiffs, and plaintiffs acknowledged, "We were one day late and three days late," in filing the motions. On appeal, plaintiffs designated as the appellate record "Motion for Partial Summary Judgments of [plaintiffs] against ... Mamoulides ... and ... Guidry and against [the STPG defendants] and all ancillary pleadings and exhibits," dated October 1, 2019. In their opposition to plaintiffs' motion for summary judgment, the STPG defendants identified a pleading having been filed by plaintiffs "beyond the legislative mandatory and court ordered deadline," entitled "Motion for Partial Summary Judgments Against [STPG] and [the individual STPG defendants] as Appropriate."

[8] The trial court initially signed a judgment on November 15, 2019. By consent motion, the trial court issued an amended judgment which is the subject of this appeal.

[9] The trial court denied summary judgment relief to STPG as to all of plaintiffs' claims of negligent or intentional acts occurring after October 2, 2012, i.e., one year before plaintiffs filed this lawsuit. STPG's writ application was denied by this court. See *Misita v. St. Tammany Parish Gov't*, 2020-0114 (La. App. 1st Cir. 4/28/20), 2020 WL 2060568.

[10] The trial court expressly recognized as final, for purposes of immediate appellate review, the judgment dismissing plaintiffs' detrimental reliance claims against the STPG defendants, finding that such claims were distinct enough from the other claims against the STPG defendants to warrant an immediate appeal. See La. C.C.P. art. 1915B(1). We find no error in the designation. See *R.J. Messinger, Inc. v. Rosenblum*, 2004-1664 (La. 3/2/05), 894 So.2d 1113, 1122.

6

asserted by Mamoulides and Guidry was granted, dismissing them as parties to plaintiffs' lawsuit. After the denial of their motion for new trial, plaintiffs devolutively appeal.

## II. INTERLOCUTORY RULINGS

Plaintiffs request that we review the trial court's interlocutory rulings denying them leave to file fourth amendments to their petition on two occasions, as well as the trial court's grant of the joint motion of the STPG defendants, OCI, Mamoulides, and Guidry to strike plaintiffs' motions for partial summary judgment. When an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings prejudicial to him in addition to the review of the final judgment. *Judson v. Davis*, 2004-1699 (La. App. 1st Cir. 6/29/05), 916 So.2d 1106, 1112, writ denied, 2005-1998 (La. 2/10/06), 924 So.2d 167. Since the appealed judgment dismisses multiple defendants, it is a final appealable judgment. See La. C.C.P. art. 1915A(1).[11] Thus, as part of plaintiffs' unrestricted appeal of the January 2, 2020 judgment, we examine plaintiffs' assertions relative to these interlocutory rulings.

### A. Leave to File Fourth Amending and Supplemental Petition

In challenging the denial of two attempted fourth amendments to the petition, plaintiffs maintain that the trial court committed errors of law, suggesting that the STPG defendants, Mamoulides, and Guidry would not have been prejudiced by either of the amendments and that the plaintiffs' requests were made in good faith. The record shows that plaintiffs' first attempt to file a fourth amendment to their petition was on February 26, 2018, wherein they sought to reiterate claims for injunctive relief against STPG, OCI, Mamoulides, and Guidry,

---

[11] La. C.C.P. art. 1915A(1) provides in pertinent part, "A final judgment may be rendered and signed by the court, even though it may not grant the successful party or parties all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court dismisses the suit as to less than all of the ... defendants."

and add requests for injunctive relief against ten additional defendants, who had become owners of land located in Phase IV-A developed by OCI and upon which they had allegedly constructed homes. Additionally, by this attempted amendment, plaintiffs sought to add claims for injunctive and mandamus relief against STPG. The trial court denied leave on April 19, 2018. The second request for leave to file a fourth amendment to the petition was denied on August 5, 2019. In this April 30, 2019 request for leave, plaintiffs sought to add two additional defendants: Colony Specialty/Argo Group as "a direct-action defendant," and Artesian Services, LLC (Artesian Services), a limited liability company for which Guidry was the alleged operating officer.

Generally, a plaintiff may amend a petition after a defendant has answered only by leave of court or written consent of the adverse party. La. C.C.P. art. 1151. Amendment of pleadings should be liberally allowed provided that the movant is acting in good faith, the amendment is not sought as a delaying tactic, the opponent will not be unduly prejudiced, and trial on the issues will not be unduly delayed. The decision whether to grant leave to amend a pleading is within the sound discretion of the trial court, and its ruling will not be disturbed on appeal except where an abuse of discretion has occurred and indicates a possibility of resulting injustice. *Palowsky v. Cork*, 2019-0148 (La. App. 1st Cir. 5/20/20), 304 So.3d 867, 875.

Insofar as plaintiffs' February 26, 2018 attempt to amend, the record shows that the matter had been pending over four-and-one-half years when the request was made. During that time, extensive discovery had been conducted. Moreover, with the exception of those asserted against the additional ten homeowner defendants, none of the facts set forth in the first attempted fourth amendment were new. As to the allegations against the additional defendants, the need for more

extensive discovery, including expert analyses, was evident, which necessarily would have resulted in a lengthy delay. Thus, the STPG defendants, OCI, Mamoulides, and Guidry showed that they would have been prejudiced by the amendment and that the trial on the issues would have been unduly delayed. Therefore, we find the trial court did not abuse its discretion in denying leave to amend the petition on April 19, 2018. See *Palowsky*, 304 So.3d at 875.

The plaintiffs' attempt on April 30, 2019 to file a fourth amendment to the petition, having been requested after the deadlines set in the pretrial order, was likewise prejudicial to the STPG defendants, OCI, Mamoulides, and Guidry. The trial court issued a pretrial order on August 9, 2018, ordering the parties to file any motions to amend or add parties no later than August 31, 2018. In conjunction with their request, which was over eight months after the deadline imposed in the pretrial order, plaintiffs suggested they had not discovered that Artesian Services was the limited liability company for which Guidry was operating as owner at the time of the salient events in this matter. But plaintiffs had ample unbridled opportunity to ascertain the nature of Guidry's relationships while he worked in the Lake Ramsey Subdivision.[12] Moreover, insofar as plaintiffs' attempt to add Colony Specialty/Argo Group as "a direct-action defendant," on April 30, 2019, plaintiffs provided no other allegations relating this proposed defendant to the pending claims already set for trial. As pointed out by the STPG defendants, the addition of a new defendant at that late date would have likely resulted in new counsel and a request for a continuance for counsel to become familiar with pending matters. Because the STPG defendants, OCI, Mamoulides, and Guidry would have been

---

[12] Although plaintiffs named Artesian Utility Company, Inc. as a defendant, see n.4, supra, nothing in the record shows any attempt by plaintiffs to validate Artesian Utility Company, Inc.'s role in conjunction with the damages they have alleged that they sustained until the March 1, 2019 deposition of Guidry, which was well after the August 31, 2018 deadline set forth in the pretrial order.

unduly prejudiced and trial on the issues will have unduly been delayed, we cannot say that the trial court abused its discretion by its denial of leave.

## B. Motion to Strike Plaintiffs' Motions for Partial Summary Judgment

Plaintiffs next complain that the trial court erred when it granted a joint motion to strike as untimely plaintiffs' motions for partial summary judgment against the STPG defendants, OCI, Mamoulides, and Guidry. Conceding that their motions for partial summary judgment were untimely, plaintiffs suggest that the trial court should have denied the motions without striking them.

The language of La. C.C.P. art. 966(B)(1), which states, "[u]nless extended by the court and agreed to by all of the parties, ... [a] motion for summary judgment and all documents in support of the motion shall be filed ... not less than sixty-five days prior to the trial," is mandatory. See La. C.C.P. art. 5053 ("Words and phrases are to be read in their context, and are to be construed according to the common and approved usage of the language employed." And "[t]he word 'shall' is mandatory."). Because it is undisputed that plaintiffs failed to timely file their motions for partial summary judgment, we find no error in the trial court's grant of the motion to strike and its refusal to hear plaintiffs' partial motions for summary judgment at the October 31, 2019 hearing alongside the timely filed motions for summary judgment of the STPG defendants, Mamoulides, and Guidry. See *Galliano v. CB & I, LLC*, 2018-0844 (La. App. 1st Cir. 4/10/19), 275 So.3d 906, 910.[13]

---

[13] We find no merit in plaintiffs' contention that the trial court granted the joint motion to strike under La. C.C.P. art. 964. According to Article 964, "The court on motion of a party or on its own motion may at any time and after a hearing order stricken from any pleading any insufficient demand or defense or any redundant, immaterial, impertinent, or scandalous matter." Here, no demands, defenses, or redundant, immaterial, impertinent, or scandalous matters were stricken. Because La. C.C.P. art. 966 does not articulate a procedural vehicle by which a mover may point out to the court the untimeliness of a motion for summary judgment, the defendants collectively chose to employ a motion to strike. Since the motion to strike was directed solely to plaintiffs' untimely filing of the motions for partial summary judgment, we find no error.

10

## III. SUMMARY JUDGMENT

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. A summary judgment is reviewed on appeal de novo with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Beer Indus. League of Louisiana v. City of New Orleans*, 2018-0280 (La. 6/27/18), 251 So.3d 380, 385-86.

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require that he negate all essential elements of the adverse party's claim, action, or defense, but rather point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966D(1).

A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Walker v. City of Independence Police Dep't*, 2018-1739 (La. App. 1st Cir. 2/7/20), 296 So.3d 25, 30. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can only be seen in light of the substantive law applicable to the

case. *Pumphrey v. Harris*, 2012-0405 (La. App. 1st Cir. 11/2/12), 111 So.3d 86, 89.

## A. Claims Against the STPG Defendants

On appeal, plaintiffs only challenge the trial court's dismissal of the individual STPG defendants insofar as their claims for detrimental reliance relief. Plaintiffs assert that they produced evidence sufficient to support a finding by the trier of fact of entitlement to detrimental reliance relief against the STPG defendants, contending that outstanding issues of material fact exist that preclude summary judgment.

In their motion for summary judgment, the STPG defendants did not assert that discretionary immunity applied to plaintiffs' claims for detrimental reliance relief. Instead, the STPG defendants maintained in their motion for summary judgment, and now on appeal, that because the detrimental reliance claims are delictual in nature, they fall within the ambit of the trial court's April 16, 2018 judgment, which sustained their exception of prescription "as to any alleged improper acts occurring more than one year prior to the filing of the original [p]etition." As such, the STPG defendants contend the trial court correctly dismissed plaintiffs' detrimental reliance claims against them.

In its written reasons for judgment, the trial court found that plaintiffs failed to produce sufficient evidence that Carroll, Lobrano, Fortson, and Thompson "made unequivocal promises to resolve [p]laintiffs' flooding issues" and granted summary judgment on this basis. As to Davis, the trial court concluded, that he "represented that he would take certain actions in order to resolve their flooding problems." But finding that Davis was entitled to discretionary immunity, the trial court also dismissed plaintiffs' detrimental reliance claims against him.

12

A summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time. La. C.C.P. art. 966F. Because the issue of whether Davis was entitled to discretionary immunity for any detrimental reliance claims plaintiffs may have against him was not before the trial court, it was error for the trial court to grant such relief.

Nevertheless, it is the trial court's judgment – not the reasons for judgment – that we review on appeal. *Walton v. State Farm Mut. Auto. Ins. Co.*, 2018-1510 (La. App. 1st Cir. 5/31/19), 277 So.3d 1193, 1199. Indeed, judgments are often upheld on appeal for reasons different than those assigned by a trial court. *Wooley v. Lucksinger*, 2009-0571 (La. 4/1/11), 61 So.3d 507, 572. Therefore, in our de novo review of the grants of summary judgment, we examine whether the trial court correctly dismissed plaintiffs' claim for detrimental reliance relief against all the STPG defendants on the basis of prescription.

Detrimental reliance is codified in La. C.C. art. 1967, which states in relevant part:

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise.

In support of their motion for summary judgment that any entitlement to detrimental reliance relief that plaintiffs may have had was prescribed, the STPG defendants maintained that plaintiffs had no contract with any of the STPG defendants. Without the existence of a contractual relationship or contractual damages between plaintiffs and the STPG defendants, the STPG defendants reasoned that plaintiffs' claims necessarily fall under the doctrine of tort and a one-

13

year prescriptive period.[14] Pointing out that the undisputed evidence shows that Carroll, Davis, Lobrano, Fortson, and Thompson had not engaged in any acts relative to the drainage issues on Major Lane after February 13, 2012, and that plaintiffs did not file suit under October 2, 2013, the STPG defendants urge that plaintiffs' detrimental reliance claims are untimely.

The Louisiana Supreme Court has held that to prevail on a detrimental reliance claim, Louisiana law does not require proof of a formal, valid, and enforceable contract. See *Suire v. Lafayette City-Par. Consol. Gov't*, 2004-1459 (La. 4/12/05), 907 So.2d 37, 58-59 (finding that despite the lack of existence of a contract, plaintiff homeowner presented sufficient summary judgment evidence of the challenged element of his detrimental reliance claim against defendant city to preclude summary judgment). Thus, we find no merit in this contention raised by the STPG defendants.

A theoretical debate exists as to whether detrimental reliance is an element of contracts or a separate source of obligations. A strong argument has been made that detrimental reliance is more correctly considered a tort theory than a contract theory. Whenever a party argues detrimental reliance, they do so because the promise lacked something essential to forming a "regular" contract. Detrimental reliance is simply not based upon one's intent to be bound (the basis of contract). The purpose of the doctrine of detrimental reliance is to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence. Detrimental reliance is an equitable rule inserted in our

---

[14] See La. C.C. art. 3492, which sets forth in relevant part that "[d]elictual actions are subject to a liberative prescription of one year."

14

Civil Code which must be construed in conjunction with the rules of contracts.[15] Jon C. Adcock, *Detrimental Reliance*, 45 La. L. Rev. 753, 761 (1985).

In order to enforce a promise based on detrimental reliance, the courts need only find the requirements stated in Article 1967. And in considering which prescriptive period to apply, since the legislature has expressed no desire to have it considered a tort or anything else (except possibly a contract), even though it does have tort characteristics, detrimental reliance is simply an "other personal action." See La. C.C. art. 3499 ("Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years."). Therefore, the general ten-year prescriptive period applies. See Adcock, *Detrimental Reliance*, 45 La. L. Rev. at 761. Cf. *Ames v. Ohle*, 2011-1540 (La. App. 4th Cir. 5/23/12), 97 So.3d 386, 393, writ denied, 2012-1832 (La. 11/9/12), 100 So.3d 837 (suggesting that in considering a claim of detrimental reliance, a determination must be made whether the claim is contractual in nature and governed by the prescriptive period of ten years for personal actions or delictual in nature and governed by a one-year prescription; and concluding that plaintiff's detrimental reliance claim against

---

[15] As to the nature of a detrimental reliance claim, scholarly commentary further explains:

> It might be said the liability of the promisor is actually delictual rather than contractual. In other words, a promisor who refuses to honor his promise on the basis of a technicality can be regarded as inflicting damage to the other party because of the promise, and the making of a promise is no doubt an act of the promisor, which clearly seems to fall within the scope of the general principle of ... [the Louisiana Civil Code] according to which whatever act of man causes damage to another binds that man to make reparation. [See La. C.C. art. 2315.]

> Such an objection can be readily overcome. It must be remembered, in the first place, that there is no liability unless there is damage and that in the situations here contemplated, there would be no damage unless the offer or promise is susceptible of inducing reliance, and the offeree or promisee actually relies to his detriment. ... In the second place, however, [Article 1967] subtracts induced reliance [from] the quasi-delictual field and places it where it belongs, in contract. Indeed, to turn an unfulfilled promise into a quasi-delict for the purpose of justifying recovery is a method as roundabout as forcing a gift into the frame of an onerous contract for the sake of protecting the interest of an unfairly disappointed promisee. [Footnotes omitted.]

Saul Litvinoff, *Still Another Look at Cause*, 48 La. L. Rev. 3, 27-28 (1987).

defendant bank regarding bank employee's mishandling of a trust was delictual in nature and thus subject to the one-year prescriptive period, where plaintiff asserted that she relied on false statements and omissions rather than specific promises).

The requirements of a detrimental reliance claim are: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. See *Suire*, 907 So.2d at 59. Stated another way, a party must prove by a preponderance of the evidence that (1) the defendant (promisor) made a promise to the plaintiff (promisee); (2) the defendant knew or should have known that the promise would induce the plaintiff to rely on it to his detriment; (3) the plaintiff relied on the promise to his detriment; (4) the plaintiff was reasonable in relying on the promise; and (5) the plaintiff suffered damages as a result of the reliance. *McLin v. HI HO, Inc.*, 2013-0036 (La. App. 1st Cir. 6/7/13), 119 So.3d 830, 833.

In their opposition to the STPG defendants' motion for summary judgment, plaintiffs offered the following relevant deposition testimony. According to Misita, by 2005, he was being assured by STPG officials that they were preparing to fix the minor flooding he was experiencing. Misita testified that as a result of the assurances from STPG officials, "year after year" he did not file a lawsuit against STPG until he "finally had enough."

Insofar as the individual STPG defendants, Misita stated of Carroll that he had visited the plaintiffs' properties on Major Lane twice. After the second visit, Carroll advised Misita that he did not know what to do to solve the flooding problems plaintiffs were experiencing.

Misita stated that Davis, who was STPG President at the time, visited the Major Lane properties with a crew of men and told Misita that the parish would be returning within 30 days to fix the flooding problems. Davis said STPG was going

16

to dig SRL-1 southward, "past [the Torreses' property], into the woods and let it turn loose into the [Tchefuncte River]." After that visit, Misita never heard from Davis again. In his affidavit, Davis attested that he had been STPG President from 2000 through 2011, in 2008 or 2009, he met with Misita at the Major Lane properties although he never met Torres, and he has had no contact with any of the plaintiffs since 2011.

Misita recalled having met Lobrano at Lobrano's office and that Lobrano went out to the Major Lane properties on more than one occasion. Lobrano advised Misita that he did not know what to do about the flooding problems plaintiffs were experiencing on Major Lane, and that he did not know what Misita wanted from STPG. But Misita also testified that Lobrano "told me several times he was working on [a solution to the flooding problems], he was working on getting it taken care of." According to Lobrano's affidavit, he last spoke with Misita and Torres in 2009.

Although Misita did not know Fortson personally, he believed that Fortson had falsely represented over the years that he, along with other STPG officials, were going to fix the flooding issues. In his deposition testimony, Fortson stated that he had advised the area soil conservationist, Darron Cooper, that Cooper could tell Misita that STPG "will continue to work on" the flooding problem on Major Lane and "try to find a solution."

When STPG President Davis did not return to the Major Lane properties within the 30 days that he had said he would, Misita contacted STPG Council Member Thompson. Misita already had an established relationship with Thompson, who had been to the property "[m]any times, many different floods," "way before" Davis visited with the crew of men. When Misita asked Thompson for help to fix the flooding, Thompson told Misita, "he would go back to the office

17

and he would talk to who he needed to talk to to get it fixed"; "[f]ind out what he could do." According to Misita, the last time that Misita talked to Thompson was "before [Misita] contacted a lawyer," when Thompson had "said his hands were tied" and that "[h]e couldn't do nothing about it."

In response to plaintiffs' opposition showing and without challenging the evidence relative to any other detrimental reliance element, the STPG defendants maintained that plaintiffs failed to establish representations by conduct or word sufficient to support detrimental reliance relief. Specifically, the STPG defendants contended that plaintiffs' showing fails to demonstrate conduct or words constituting a promise upon which plaintiffs could rely to their detriment. The STPG defendants urged that the statements plaintiffs point to as having been stated by the respective individual STPG defendants fall short of the type of promise necessary to establish a detrimental reliance claim.

In *Wooley v. Lucksinger*, 2006-1167 (La. App. 1st Cir. 5/4/07), 961 So.2d 1228, 1239, this court, citing H. Alston Johnson, III, 18 *La. Civ. Law Treatise 2d*, Civil Jury Instructions, § 19.08, p. 401 (2001), recognized the definition of a promise as follows:

> A promise is a *declaration* which binds the person who makes it, either in conscience or law, to do a specific thing, which then gives to the other person a right to expect or claim the performance of that thing. Another definition of a promise is that it is *an offer* which is definite and certain and which the promisor intends to be binding. A promise must be clear and unambiguous in order to be enforceable. The mere expression of an intention is not a promise. (Emphasis added.)

Accord *Saba v. Emerson*, 2016-0317 (La. App. 1st Cir. 10/31/16), 2016 WL 6427697, at *7.

Applying the definition of a promise as set forth by the *Wooley* court, we conclude that, of the representations in conduct and words plaintiffs established in

18

their opposition to the STPG defendants' motion for summary judgment, only those attributed to STPG President Davis – Misita's deposition testimony that Davis stated STPG was going to dig SRL-1 southward, "past [the Torreses' property], into the woods and let it turn loose into the [Tchefuncte River]" – are sufficient to support a finding by a trier of fact of a promise, i.e., a declaration to do a specific thing, which was a definite and certain offer intended to be binding. And plaintiffs' evidence establishes the declaration or definite and certain offer was made at a point in time prior to the filing of the lawsuit. But Misita's deposition testimony does not suggest that Carroll made any declarations to do anything specific for him or which could be construed as a definite and certain offer to him. And the representations by words and conduct that Misita attributed of Lobrano, Fortson, and Thompson were neither declarations to do specific things nor definite and certain offers intended to be binding. At best, as described by Misita, the words of Lobrano, Fortson, and Thompson were statements made acknowledging a flooding problem and willingness to assist to the extent assistance could be had.

Accordingly, we conclude the trial court correctly dismissed all of plaintiffs' claims, including those for detrimental reliance relief, asserted against defendants Carroll, Lobrano, Fortson, and Thompson. But because the application of discretionary immunity to a detrimental reliance claim was not an issue raised in the STPG defendants' motion for summary judgment, and plaintiffs presented sufficient evidence to allow a trier of fact to conclude that Davis made a promise to plaintiffs such that their detrimental reliance claims are contractual in nature, the dismissal of plaintiffs' detrimental reliance claims against Davis and STPG under an application of the one-year delictual prescriptive period was not proper on the showing made. Therefore, the trial court erred in dismissing plaintiffs' detrimental

19

reliance claims against Davis and STPG, whom Davis represented at the time he made the alleged promise.[16]

## B. Claims Against Mamoulides and Guidry

On appeal, plaintiffs assert the trial court erred in granting summary judgment and dismissing their claims against defendants Mamoulides and Guidry. In their motion for summary judgment, Mamoulides and Guidry averred that they were entitled to dismissal from plaintiffs' lawsuit on two bases. They first asserted that they were shielded from personal liability by their respective limited liability company (LLC). Second, Mamoulides and Guidry maintained that plaintiffs failed to establish a claim of detrimental reliance against either of them. We examine each of these bases.

An LLC is an entity to which the law attributes personality and is, therefore, a juridical person. See La. R.S. 12:1301A(10) ("'Limited liability company' or 'domestic limited liability company' means an entity that is an unincorporated association having one or more members that is organized and existing under this Chapter."). Therefore, as a general proposition, the law considers an LLC and the member(s) comprising the LLC, as wholly separate persons. See La. C.C. art. 24. *Ogea v. Merritt*, 2013-1085 (La. 12/10/13), 130 So.3d 888, 894-95.

La. R.S. 12:1320, entitled "Liability to third parties of members and managers," provides:

> A. The liability of members, managers, employees, or agents, as such, of a limited liability company organized and existing under this Chapter shall at all times be determined solely and exclusively by the provisions of this Chapter.

---

[16] Although on appeal the STPG defendants assert that the evidence failed to establish any representations by word or conduct directly to the Torreses upon which they could rely to their detriment, the STPG defendants did not challenge Misita's alleged representation of the Torreses in his interactions with the STPG defendants as set forth in plaintiffs' third amending petition. And the STPG defendants' contention on appeal that plaintiffs' reliance on the word or conduct of any of the STPG defendants was unreasonable was not raised in their motion for summary judgment. As such, these issues are not properly before us in this appeal. See La. C.C.P. art. 966F.

B. Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company.

C. A member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such a person's rights against or liability to the limited liability company.

D. Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.

In Subsection A, the liability of a member of an LLC is to be "determined solely and exclusively" under this statute and under any other provision of the Chapter of the Revised Statutes dealing with Louisiana's LLC law. In Subsection B, a general rule is set forth: "no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company." Subsection C identifies the proper party defendant(s) to a suit against an LLC. And in Subsection D, the final portion of La. R.S. 12:1320, some enumerated exceptions to the general rule of limited liability established in Subsection B are set forth. See *Ogea*, 130 So.3d at 896-97. Here, we are called upon to focus on the "negligent or wrongful act" exception set forth in Subsection D.

Four factors guide us in analyzing the "negligent or wrongful act" exception: (1) whether a member's conduct could be fairly characterized as a traditionally recognized tort (the tort factor); (2) whether a member's conduct could be fairly characterized as a crime, for which a natural person, not a juridical person, could be held culpable (the criminal conduct factor); (3) whether the conduct at issue was

21

required by, or was in furtherance of, a contract between the claimant and the LLC (the contract factor); and (4) whether the conduct at issue was done outside the member's capacity as a member (the capacity factor). See *Ogea*, 130 So.3d at 900-01.

Under the tort factor, the commission of a tort by an LLC member "weighs in favor of" applying the "negligent or wrongful act" exception. Courts should focus on whether the member owes a personal tort duty to the alleged victim. See *Ogea*, 130 So.3d at 901-02. The tort factor may be dispositive because finding that a member breached a personal tort duty owed to the claimant could be enough to "pave the way to a member's personal liability for the tort." *Ogea*, 130 So.3d at 905.

Insofar as the criminal conduct factor, if the member's conduct "constitutes a crime, that fact weighs in favor of [applying] the 'negligent or wrongful act' exception," which in turn favors a finding of personal liability. *Ogea*, 130 So.3d at 902. The member does not have to have been actually convicted of the crime to establish the factor. It is enough that a claimant is able to prove by a preponderance of the evidence the existence of a right, not a remedy, that they may have against the member. *Ogea*, 130 So.3d at 903.

Under the "contract factor," a member is less likely to be found personally liable for a debt or obligation of the business if his conduct "was required by, or was in furtherance of, a contract between the claimant and the LLC." The rationale for this factor is that, under Subsection B, members should not be liable for an obligation of the LLC. Thus, if the member acts to satisfy one of these obligations, he should be more likely to qualify for limited liability. *Ogea*, 130 So.3d at 904.

The final factor of the "negligent or wrongful act" exception is the "factor of acting inside or outside the LLC," i.e., the capacity factor. Thus, actions taken

"outside" of an LLC owner's capacity as a member weigh in favor of personal liability. *Ogea*, 130 So.3d at 904. See also Thomas Bourgeois, *Mirror, Mirror: Amending Louisiana's LLC Statutes Related to Personal Liability of Members to Reflect Corporate Counterparts After Ogea v. Merritt*, 76 La. L. Rev. 1339, 1364 (2016).

Each case must be decided on its specific facts and courts must analyze all of the factors in their decisions. Thus, one factor may be dispositive of personal liability in one case but not in others. A court is not bound to base its decision on whether a member should be personally liable on the existence of any one of the enumerated factors in every case. *Id.*, 76 La. L. Rev. at 1361; *Ogea*, 130 So.3d at 905.

With these precepts in mind, we turn to the documents submitted by the parties in support of and opposition to the motion for summary judgment. Mamoulides and Guidry point out that all their actions relative to the development of Phase IV-A were taken on behalf of their LLCs. Therefore, they reason that they are not personally liable to plaintiffs and are entitled to dismissal from the lawsuit in their respective individual capacity. In support of their conclusion, Mamoulides and Guidry attached their respective affidavits to their motion.

According to Mamoulides, he is the sole member of OCI, which is the developer of Phase IV-A. Construction of this phase of the Lake Ramsey Subdivision began in 2011. Guidry acted as an owner representative for OCI through Artesian Services. Mamoulides attested that he did not do any work on the land of Phase IV-A. This included that he had not moved dirt, added dirt, operated equipment, dug a pond, filled in any lots, moved or installed culverts, built or maintained ditches, or built any fences.

23

In his affidavit, Guidry attested that he is the sole member of Artesian Services that did work in connection with OCI's development of Phase IV-A. In conformity with Mamoulides, Guidry agreed that OCI was the sole developer of that phase of the Lake Ramsey Subdivision. Guidry also stated that "[a]ny work [he] did with the development of [Phase IV-A] was done as a member of Artesian Services" and that he "did not do any work in [his] individual capacity in connection with the development of [Phase IV-A]."

In their opposition to the motion for summary judgment, and on appeal, plaintiffs suggest two bases for which outstanding issues of material fact exist that demonstrate that Mamoulides and Guidry in their respective individual capacities are not entitled to dismissal from this lawsuit by summary judgment. First, plaintiffs aver that the repositioning of a culvert in conjunction with the construction of an emergency exit from Phase IV-A to Major Lane caused additional flooding on the Major Lane properties and interfered with their enjoyment of their properties. Second, they claim that the construction of a chain link fence across the green space located perpendicular to the western fence line of Phase IV-A, through SRL-1, and continuing west to the wooden fence on Misita's property, encroached on Misita's property thereby constituting a trespass. Contending they produced sufficient evidence for a factfinder to determine that these actions were undertaken by Guidry, and that Guidry was acting for OCI at Mamoulides' request, plaintiffs urge that Mamoulides and Guidry – and not only their respective LLCs – are personally liable for resulting damages.

**1. Repositioning of Culvert in Construction of Phase IV-A Emergency Access**

Property may not be used in a manner which deprives the owners of neighboring property the liberty of enjoying their own property. And where such

24

use causes damage, a remedy is available under La. C.C. art. 2315.[17] See *Smith v. Livingston Par. Police Jury*, 423 So.2d 5, 8 (La. App. 1st Cir. 1982).

In this case, it is undisputed that after this lawsuit commenced, an emergency access was installed in Phase IV-A in which an existing culvert was repositioned. Additionally, in their opposition to the motion for summary judgment, plaintiffs filed evidence showing the following.

In his deposition, Guidry admitted that although he did not have any expertise in paving roads or doing road work, he constructed an access roadway from Ramsey Court, a road near the westernmost property line inside Phase IV-A, to join with the roadway of the Major Lane cul-de-sac. According to Guidry, "Mamoulides was basically the person in charge of [OCI]." He explained that he worked with Mamoulides in constructing the emergency access roadway, noting they used an aggregate limestone top. The emergency access was based on "a rough plan that [STPG] required to install [the] emergency exit," and Guidry had a "rough description or something by the engineer" as to the location of the emergency gate at which he connected the concrete roadway of Ramsey Court to the asphalt roadway of Major Lane.

In joining the two roadways, Guidry repositioned an existing culvert in SRL-1 to below the limestone aggregate top roadway. Guidry stated that he contacted STPG Council Member Thompson for permission to move the culvert so that it would line up with the emergency access gate. Thompson advised Guidry that he could "but don't dig it any deeper than what the bottom of the base of [SRL-1] is." Guidry then dug up the existing culvert, cleaned the dirt out of it "because it was full of dirt," and set the culvert back down in the ground in the ditch. Guidry conceded that he had no engineering plans indicating where the culvert should be

---

[17] La. C.C. art. 2315A provides, "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

25

located, only that he "put it in line with the gate, [i.e.,] the opening that we installed." Guidry stated that all the work he undertook in conjunction with the emergency gate and the culvert placement was done as the principal and owner of Artesian Services.

Shannon Loyd, an STPG employee who worked as the group leader of the Folsom Barn in the Department of Public Works (DPW), testified that in January 2019, he was instructed to clean out SRL-1 from Major Lane, in a northerly direction about 200-300 feet, to a cross lateral with a flap gate. When he and his crew went out to the site, based on measurements they took, Loyd determined that the culvert under the limestone aggregate top roadway Guidry had installed was placed incorrectly. Loyd explained that the culvert was actually two culverts joined together to approximately 40 feet in length (the culvert system) and was located parallel to the Phase IV-A emergency exit. Because the northern end of the culvert system was higher than the southern end, Loyd and his crew leveled it out "directly flat." Once leveled, the resetting of the culvert system allowed water to recede at Major Lane, permitting water to flow in a northerly direction from the Torreses' property located south of the culvert system. Loyd agreed that the pitch of the culvert system as it appeared when he went to the Major Lane site in January 2019 acted as a dam on the Torreses' property to the south.

In rendering his opinion as to the cause of the flooding around SRL-1, professional engineer, Brandon "Shane" Guin, recognized that, in January 2019, DPW of STPG had realigned the culvert system under the limestone aggregate top roadway in a proper direction. His testimony suggested that the presence of the misaligned culvert system contributed to the flooding and stagnant water on the Torreses' property.

26

In his June 13, 2017 deposition testimony prior to the realignment of the culvert, Torres explained that upon installation of the culvert system under the limestone aggregate top roadway, the water on his property stopped draining to the north. Torres estimated that on his land near SRL-1, there had been approximately three feet of stagnant water for over three years as a result of the repositioning of the culvert system. He believed the culvert system had been set incorrectly and was a reason for the stagnating water on the property he and his wife owned. According to Torres, he and his wife had suffered adverse health effects from the standing water. He explained those health problems in detail, particularly as related to his wife. And in his deposition testimony, Misita stated that when Guidry repositioned the culvert system at the emergency access, water started backing up onto his property.

With this evidence, we find outstanding issues of material fact preclude dismissal of Mamoulides and Guidry in their individual capacities from plaintiffs' lawsuit. The testimony of Torres and Misita that with the repositioning of the culvert system, their property stopped draining is sufficient to support a finding by the trier of fact that its relocation by Mamoulides and Guidry to under the limestone aggregate top roadway constituted a use of the property in a manner that deprived plaintiffs of the liberty of enjoying their own property and caused damage to plaintiffs. The undisputed evidence showed that Guidry, working with Mamoulides, repositioned an existing culvert system in conjunction with creation of an emergency access at the western side of Phase IV-A. The testimony of both DPW employee Loyd and expert professional engineer Guin would support a finding that the misalignment of the culvert system resulted in a block in the northerly flow of the drain and contributed to additional standing water on the Torreses' property. As such, whether the repositioning of the culvert system to

align with the construction of the emergency access gate was an act that caused damage to plaintiffs so as entitle plaintiffs to damages under Article 2315 is an outstanding issue of fact. Thus, the tort factor weighs in favor of personal liability and against the dismissal of Mamoulides and Guidry in their respective individual capacities by way of summary judgment.

Additionally, it is undisputed that none of the actions taken by either Mamoulides or Guidry was in furtherance of a contract they had with plaintiffs. Therefore, the contract factor also weighs in favor of allowing the imposition of personal liability against Mamoulides and Guidry.

There is, however, no evidence to support a finding that the conduct of either Mamoulides or Guidry constituted the commission of a crime against plaintiffs. Consequently, the criminal factor does not weigh in favor of the imposition of personal liability. And both Mamoulides and Guidry established that they considered their actions of working on the limestone aggregate top roadway and the repositioning of the culvert system in the alignment with the emergency access gate as having been taken in their capacities as representatives of either or both OCI and Artesian Services. Thus, the capacity factor does not weigh in favor of allowing the imposition of personal liability.

Although two *Ogea* factors weigh in favor of permitting the imposition of personal liability against Mamoulides and Guidry and two factors weigh in favor of permitting only the imposition of liability against the LLCs, if the ultimate trier of fact were to find that either Mamoulides or Guidry breached a personal tort duty owed to the Torreses, the tort factor alone may be dispositive and could be enough to "pave the way to [the] member's personal liability for the tort." See *Ogea*, 130 So.3d at 905. Accordingly, on the showing made, we conclude outstanding issues

28

of material fact preclude the dismissal by summary judgment of all of plaintiffs' claims against Mamoulides and Guidry in their respective individual capacities.

## 2. Chain Link Fence

A suit seeking damages for trespass is an action in tort. *Perrilloux v. Stilwell*, 2000-2743 (La. App. 1st Cir. 3/28/02), 814 So.2d 60, 62. The tort of trespass is defined as the unlawful physical invasion of the property of another. *Dickie's Sportsman's Centers, Inc. v. Dep't of Transp. and Dev.*, 477 So.2d 744, 750 (La. App. 1st Cir.), writ denied, 478 So.2d 530 (La. 1985). A trespasser is one who goes on another's property without the other's consent. *Williams v. J.B. Levert Land Co., Inc.*, 162 So.2d 53, 58 (La. App. 1st Cir.), writ refused, 245 La. 1081, 162 So.2d 574 (1964).

Plaintiffs submitted with their opposition to summary judgment the depositions of Guidry and land surveyor Bruce M. Butler, III. In his testimony, Guidry admitted that he was responsible for the installation of a fence across SRL-1, although he insisted that it was placed on property owned by OCI and that, therefore, he had the right to put it up. He thought the reason that he had originally set the fence posts was because he wanted to keep people on Major Lane from riding four-wheelers on OCI's property. Guidry testified that his "guys" probably installed the chain-link portion of the fence and although he did not personally install it, he "may have touched it." He believed that the wooden fence was the extent of Misita's property. According to Guidry, everything east of the wooden fence on Misita's property belonged to OCI, including SRL-1. Guidry denied that Mamoulides told him to place the posts across SRL-1 to Misita's wooden fence, explaining that he put them up because the homeowners in Phase IV-A complained to him about the four-wheeler riders.

Butler testified that in surveying Misita's property, he set the easternmost perimeters based on the location of monuments and that he set a ½-inch rebar at the southern boundary. He used the westernmost boundary line of Misita's property to find the easternmost boundary. Butler determined that portions of SRL-1 encroached on Misita's property although he did not depict that encroachment with specificity on the survey he prepared. Butler concluded that the wooden fence located on Misita's property was 3.6 feet within the outer eastern perimeter of the property.

Applying the four factors set forth in *Ogea*, 130 So.3d at 900-905, to the documents filed in conjunction with the motion for summary judgment, plaintiffs provided no evidence to connect Mamoulides with the installation of the chain link fence. Nothing shows that he was aware of the fence or responsible for the decision to install it. As such, the record is devoid of any evidence to support a finding that Mamoulides breached a personal duty he owed to plaintiffs so as to find him liable in his individual capacity for conduct in connection with the chain link fence.

But we find outstanding issues of material fact preclude Guidry's dismissal from the lawsuit in his individual capacity. Plaintiffs produced sufficient evidence to support a finding by the trier of fact that the property between Misita's wooden fence and SRL-1 belongs to Misita. As such, whether the installation of the chain link fence by Guidry, or at Guidry's direction, was an unlawful physical invasion of Misita's property so as to entitle Misita to damages for the tort of trespass is a material issue of fact.

Moreover, whether such a trespass is sufficient to constitute a criminal

trespass, see La. R.S. 14:63,[18] involves subjective facts, which do not support summary judgment in this case. See *Baldwin v. Bd. of Sup'rs for Univ. of Louisiana Sys.*, 2006-0961 (La. App. 1st Cir. 5/4/07), 961 So.2d 418, 422 ("A motion for summary judgment is rarely appropriate for a determination based on subjective facts, such as intent, motive, malice, knowledge, or good faith."). Therefore, a material issue of fact as to whether the negligent or wrongful act exception to the general rule of limited liability on the basis of the criminal factor exists so as to preclude summary judgment dismissal of Guidry in his individual capacity.

It is undisputed that any negligent or wrongful act committed by Guidry in the installation of the chain link fence was not in furtherance of a contract between either OCI or Artesian Services and Misita so as to support the contract factor. Therefore, this factor weighs in favor of allowing the imposition of personal liability against Guidry.

Guidry's evidence that "[a]ny work [he] did with the development of [Phase IV-A] was done as a member of Artesian Services" and that he "did not do any work in [his] individual capacity in connection with the development of [Phase IV-A]" was not rebutted by plaintiffs. Therefore, this factor weighs in favor of dismissing Guidry in his individual capacity.

Since the tort factor alone may be dispositive because finding that a member breached a personal tort duty owed to the claimant could be enough to "pave the way to a member's personal liability for the tort," see *Ogea*, 130 So.3d at 905, each

---

[18] La. R.S. 14:63 provides in relevant part:

> B. (1) No person shall enter upon immovable property owned by another without express, legal, or implied authorization. ...

> C. (1) No person shall remain in or upon property, movable or immovable, owned by another without express, legal, or implied authorization.

31

case must be decided on its specific facts, and we have been instructed to analyze all of the factors in our decisions, we conclude the trial court erred in dismissing Guidry from this lawsuit in his individual capacity by summary judgment under the facts of this case. See *Ogea*, 130 So.3d at 905. See also Bourgeois, 76 La. L. Rev. at 1361. But see and compare *Hooper v. Wisteria Lakes Subdivision*, 2013-0050 (La. App. 1st Cir. 9/13/13), 135 So.3d 9, 20, writ not considered, 2013-2433 (La. 1/27/14), 130 So.3d 954 (after a trial on the merits, there was no error in the conclusion that the defendants were not personally liable for any debt, obligation or liability of the LLC where evidence established that all actions taken by the defendants with regard to the property upon which timber trespasses occurred were in their capacities as members or agents of LLC).

### 3. Detrimental Reliance

Without regard to the respective LLC relationship of each and as a seemingly independent basis of individual liability, plaintiffs urge the trial court's total dismissal of Mamoulides and Guidry from this lawsuit is erroneous because they have asserted viable claims in detrimental reliance against these defendants. In their motion for summary judgment, and now on appeal, Mamoulides and Guidry do not contend or otherwise argue that an application of the factors set forth in *Ogea*, 130 So.3d at 900-905, to a claim for detrimental reliance relief entitles them to dismissal from the lawsuit.[19]

Instead, relying on the deposition testimony of Misita and Torres, Mamoulides and Guidry suggest only that they made neither any declarations to plaintiffs to do a specific thing nor offers which were definite and certain and intended to be binding. Additionally, they claim that plaintiffs were unable to show

---

[19] Thus, this issue is not before us in this appeal and we pretermit such a discussion. See La. C.C.P. art. 966F.

32

a change of position so as to support a conclusion of entitlement to detrimental reliance relief by the trier of fact.[20]

In response, plaintiffs offered the deposition testimony of Misita, in which he testified that the single time Davis visited the Major Lane properties with the crew of men and told Misita that the parish would be returning within 30 days to fix the flooding problems, Guidry was also present. Misita stated that Guidry advised Misita, "We'll start working on this project and get it fixed for you, buddy." Misita recollected that although Davis did not return within the 30-day time period as he had stated, Guidry did and he told Misita, "We're working on it, we're going to get to it in the next 30 days." Misita recalled representations by Guidry that Guidry owned the green space between SRL-1 and Phase IV-A and stated two or three times that he was going to take care of the flooding problems the Major Lane properties were experiencing. When Davis said that STPG was going to dig SRL-1 southward, "past [the Torreses' property], into the woods and let it turn loose into the [Tchefuncte River]," Guidry repeated the same thing "over and over," indicating he would "have a machine here within 30 days ... and [was] going to take [SRL-1] south."

Insofar as Mamoulides, Misita testified that although he had met Mamoulides twice, they had only "split[-]second" encounters. Misita admitted that he had never discussed his complaints of flooding issues with Mamoulides. Similarly, in his deposition testimony, Torres stated that he had never talked to or received any promises from Mamoulides.

Based on the showing made, the trial court correctly dismissed plaintiffs' detrimental reliance claims against Mamoulides. The testimony of Misita and

___

[20] Although on appeal, Mamoulides and Guidry assert any detrimental reliance claim is delictual in nature and, therefore, prescribed, they did not raise that issue in the motion for summary judgment and, therefore, it is not properly before us in this appeal. See La. C.C.P. art. 966F.

Torres fails to establish any representation by Mamoulides in conduct or word which could constitute a promise so as to support a claim for detrimental reliance relief against this defendant. But the representations in conduct and words that were attributed to Guidry by Misita in his deposition testimony are sufficient to support a finding by a trier of fact of a promise, i.e., a declaration to do a specific thing or a definite and certain offer intended to be binding.[21] As with STPG President Davis, Misita's deposition testimony is sufficient to support a finding by the trier of fact that Guidry's declaration or definite and certain offer was made at a point in time prior to the filing of this lawsuit.

Although in the motion for summary judgment Guidry averred that plaintiffs failed to produce evidence to support a finding that they had a change in position as a result of a representation or conduct by Guidry, Misita testified that he delayed filing this lawsuit for years based on the representations made by Guidry and STPG officials until he finally "had enough." And the allegation in plaintiffs' petition that Guidry's representations were made to convince plaintiffs to amicably resolve their dispute was not rebutted by Guidry. Therefore, plaintiffs' showing is sufficient to preclude summary judgment insofar as their detrimental reliance claims against Guidry.

Having concluded that under an application of the four factors set forth in *Ogea*, 130 So.3d at 901-05, plaintiffs produced sufficient evidence to establish outstanding issues of material fact as to the personal liability of Mamoulides and Guidry for actions associated with the repositioning of the culvert system; as to Guidry's personal liability for the actions related to the installation of the chain link fence; and as to Guidry's liability for plaintiffs' detrimental reliance claims,

---

[21] In the motion for summary judgment, Guidry did not challenge Misita's alleged representative capacity on behalf of the Torreses in Misita's interactions with Guidry as set forth in plaintiffs' third amending petition.

the trial court's grant of summary judgment and dismissal of plaintiffs' claims against these defendants is reversed.[22]

## IV. DECREE

For these reasons, we affirm the trial court's April 19, 2018 and August 5, 2019 interlocutory rulings, denying plaintiffs leave to file a fourth amendment to their petition. Insofar as the January 2, 2020 judgment appealed by plaintiffs, we affirm the trial court's grant of the motion to strike plaintiffs' untimely filed motions for partial summary judgment. We reverse that portion of the judgment that granted summary judgment and dismissed all of plaintiffs' claims against defendants Kevin Davis and STPG. We reverse that portion of the judgment that granted summary judgment and dismissed all of plaintiffs' claims against defendants Mamoulides and Guidry, except we affirm the dismissal of the claims against Mamoulides (1) in this individual capacity for damages associated with construction of the chain link fence; and (2) for detrimental reliance relief. All other aspects of the judgment are affirmed. This matter is remanded for further proceedings. Appeal costs in the amount of $8,238.77 are assessed one-third ($2,746.25) to plaintiffs, Anthony Misita, Glenn Torres, and Linda Torres; one-third ($2,746.26) to St. Tammany Parish Government and Kevin Davis; and one-third to defendants, John Mamoulides and David Guidry ($2,746.26).

**APRIL 19, 2018 RULING AND AUGUST 5, 2019 JUDGMENT AFFIRMED; JANUARY 2, 2020 JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; REMANDED.**

---

[22] Although plaintiffs made references suggesting that Mamoulides and Guidry may be liable in their individual capacities for all of the actions taken by OCI, they did not brief the issue and, therefore, it is not properly before us in this appeal. See La. U.R.C.A. Rule 2-12.4B(4) ("All ... issues for review must be briefed. The court may consider as abandoned any ... issue for review which has not been briefed.").

ANTHONY MASITA D/B/A
DAYDREAMER STABLES AND
GLENN AND ELLEN TORRES

VERSUS

JOHN MAUMOULIDES, LAKELOTS,
INC., INTREPID, INC., ONE CONSORT
INTERNATIONAL, LLC, LAKE
RAMSEY DEVELOPMENT AND ST.
TAMMANY PARISH

NUMBER: 2020 CA 0952
C/W 2020 CA 0953

FIRST CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

*JEW*

**WELCH, J., dissenting in part.**

I respectfully disagree with the majority's decision insofar as it determines that the dismissal of the plaintiffs' detrimental reliance claims against Kevin Davis, the former President of St. Tammany Parish ("Parish President"), and David Guidry, a subcontractor that accompanied Davis to the plaintiffs' properties, was improper. Relying on Misita's testimony that Davis, when he was Parish President, visited the properties with a crew of men, including Guidry, and told Misita the parish would be returning within thirty days to fix the flooding problems by digging the drainage lateral/canal southward past the properties and that Guidry told Misita they would "start working on [the] project and get it fixed," and were "going to get to it in the next 30 days," the majority concludes that Davis and Guidry made a promise, *i.e.* a declaration to do a specific thing, which was a definite and certain offer intended to be binding.

However, I believe that this evidence was woefully insufficient to allow a trier of fact to conclude that either Davis or Guidry made an unequivocal promise to either of the plaintiffs that they intended to be binding. Furthermore, there is absolutely no evidence demonstrating that the plaintiffs reasonably or justifiably relied on these statements by Davis or Guidry to their detriment or that there was a change in their position to their detriment by relying on those statements. Although the majority

suggests that this element of a detrimental reliance claim was not at issue on the motion for summary judgment, but rather, the issue was the applicable prescriptive period, it is well-settled that proper prescriptive period to be applied in any action depends on the nature of the cause of action. **Roger v. Dufrene**, 613 So.2d 947, 948. Herein, there is simply no evidence of a claim that is in the nature of a claim for detrimental reliance. Regardless, I disagree that the prescriptive period for detrimental reliance is ten years. The idea that elected public servants can be sued years after they are out of office for promises they made while in office but for some reason they could not or did not keep will have a chilling effect on public officials' ability to do their job. Therefore, I would affirm the judgment of the trial court in its entirety.

Thus, I respectfully dissent.

**STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT**

**2020 CA 0952**

**consolidated with**

**2020 CA 0953**

**ANTHONY MASITA D/B/A DAYDREAMER STABLES
AND GLENN AND ELLEN TORRES**

**VERSUS**

**JOHN MAUMOULIDES, LAKELOTS, INC., INTREPID, INC.,
ONE CONSORT INTERNATIONAL, LLC, LAKE RAMSEY
DEVELOPMENT AND ST. TAMMANY PARISH**

**Burris, J., dissenting in part.**

I disagree in part with the majority opinion. I would affirm the trial court's summary judgment dismissal of plaintiffs' detrimental reliance claims against former St. Tammany Parish President Kevin Davis and against St. Tammany Parish Government. Similar to Judge Welch, I do not think plaintiffs' summary judgment evidence was sufficient to create a genuine issue of material fact: (1) as to whether Mr. Davis made an unequivocal promise to either plaintiff that he intended to be binding, or (2) to show that plaintiffs reasonably or justifiably relied to their detriment on statements made by Mr. Davis, as President of St. Tammany Parish.

Thus, I would affirm the trial court's judgment insofar as it dismisses the plaintiffs' detrimental reliance claims against these defendants.